### J. A. MAGRUDER v. THE STATE.

*No. 1161.    Decided November 20th, 1895.*

#### 1.    Murder—Postponement—Convicted Co-Defendant.

On a trial for murder, where two parties were jointly indicted, one of whom had been tried and convicted.    Held:  On the trial of the other, that an application for postponement to obtain the testimony of such convicted co-defendant, was properly refused.

#### 2.    Same—Evidence—Conspiracy—Acts and Declarations of a Co-Conspirator.

On a trial for murder, where there is sufficient evidence to establish a conspiracy between another party and defendant to commit the crime, the acts and declarations of such other party, in furtherance of and before the consummation of the crime, are admissible as evidence against the defendant.

#### 3.    Same—Wife of Deceased as Witness for Defendant—Impeachment of.

Where the wife of the deceased is a witness in behalf of the defendant charged with the murder of her husband, she stands in the same attitude, and may be cross-examined and impeached for credibility, as any other witness; and she may be asked, if she had not agreed to pay a fee to an attorney to defend the man who had slain her husband; such fact, if established, being a material circumstance going to the weight of her testimony.

#### 4.    Same—Manslaughter—Charge of the Court.

On a trial for murder, where the acts, declarations and conduct of a co-defendant have been adduced in evidence, and the charge of the court upon manslaughter especially authorized the jury to look at all the facts and circumstances in evidence before them.    Held: That this was sufficiently comprehensive to permit the jury to look at and consider the acts and conduct of the co-defendant in that connection.

#### 5.    Same—New Trial—Newly Discovered Evidence.

A new trial will not be granted, for alleged newly discovered evidence, where the fact proposed to be proved is wholly immaterial, and could not have benefitted the defendant if it had been proved.

APPEAL from the District Court of Cooke.    Tried below before Hon. D. E. BARRETT.

This appeal is from a conviction for murder of the second degree, with the penalty assessed at thirty years' imprisonment in the penitentiary.

This is a companion case to the case of Elmer Jones v. The State, 34 Tex. Crim. Rep., p. 490.

Jones and Magruder were both indicted for the murder of George Humphrey, which was alleged to have been committed in Cooke County, on the 26th of September, 1894, by shooting him with a pistol.    A severance having been granted, Jones was first tried, and convicted of murder of the second degree, with his punishment assessed at imprisonment in the penitentiary for a term of twenty years.

The killing took place on the farm of deceased, and but a short distance from his house, on the afternoon of Wednesday, 26th day of September, 1894. There is no question but that Magruder, this appellant, was the party who shot and killed him, though Jones was present at the time. In fact appellant confessed, that he, and he alone, had done the killing, to the first parties who came to the house, just after the killing; and, at that time, Jones claimed to have defendant under arrest for the killing. And, shortly thereafter, Jones took defendant in a buggy, or hack, to Gainesville and turned him over to the sheriff, who put him in jail. Defendant, as a witness in his own behalf at the trial, testified, that he alone did the killing, and that Jones, who he believed was acting with deceased, immediately leveled his pistol upon him, ordered him to drop his pistol and throw up his hands, which he did; and, that Jones took his (defendant's) pistol, and arrested him and kept him under arrest until he delivered him to the sheriff at Gainesville.

In substance, the testimony shows that appellant was a first cousin of Mrs. Humphrey, wife of deceased, a discharged United States soldier, 45 years of age, who had come to Texas several years previous to the killing to visit a relative at Dallas; and, while there, had been invited by Mrs. Humphrey, with consent of her husband, to pay them a visit. After spending some little time with them, he went to work upon the farm, and remained on the place, off and on, some three years or more. During this time he was employed as guard at the World's Fair, at Chicago; and, while he was there, Mrs. Humphreys attended the fair, spending several days at Chicago. In 1894, defendant planted a crop of cotton in a field on deceased's farm, the understanding being that deceased was to have part of the crop for the rent of the land, and was to board appellant until the crop was gathered. Deceased became jealous of defendant, and had numerous quarrels with his wife; at one time knocking her down with a pair of tongs, in presence of defendant, and charging her with having been, on one occasion, at night, in defendant's room. His conduct had led the wife to institute proceedings for divorce, but the parties became reconciled, and the suit was abandoned.

Elmer Jones was a stranger to all the parties, who came to Humphreys' farm some two weeks prior to the killing, and engaged as a hand to pick cotton for Humphreys.

On Saturday morning, before the killing, defendant went to Dallas, and during that day Humphrey got mad and went off to Gainesville, late in the evening, and his wife and two daughters staid all night at a neighbor's, being afraid to stay at home. On Sunday evening, when defendant returned from Dallas, deceased told him to leave the place; and defendant packed his trunk and started to go and get a conveyance to carry it away, when decease" called him back. He came back and on Monday morning both he and deceased went to town, where they were seen talking together in an apparently friendly manner. They returned home together in deceased's buggy in seemingly good humor. On the next day they picked cotton together. On Wednesday morning

defendant brought a bottle of wine, out of the smoke-house, which he had made, and asked Mrs. Humphrey and her daughter to taste it and let him know what they thought of it. As they were drinking the wine, deceased came up, and became greatly enraged and cursed defendant, saying : "G—d d—n you, you are ruining two of them right here under my nose!" Defendant said nothing, and walked off. After breakfast, when deceased got ready to go to town, he ordered defendant to leave the place, and never put foot on it again—and that if he was there when he came back from town, he would fill him full of lead. Defendant said he would, but that deceased would have to pay his board while he picked out his cotton. Deceased said he would do so; and deceased and Elmer Jones went off in a buggy together to Gainesville. Magruder left the house and was gone during the entire forenoon. At Gainesville, Elmer Jones bought a 44-calibre pistol and cartridges at a store, and he and another party, who is not identified, looked at another pistol at another store, which the other party afterwards came and purchased with cartridges. While in town, Elmer Jones hunted up Ware, the Sheriff of Cooke County, and told him that, he believed there was going to be some trouble out in the country, between George Humphrey and Magruder; and that there might be a killing; and said he wanted authority to arrest one or both of them, if necessary. The sheriff told him he could not deputize him, but that any citizen seeing an offense committed had a right, under the law, to make arrest and could do so if necessary. This occurred at 10 o'clock a. m., and the sheriff said, that he did not know Jones at that time. About noon deceased and Jones came back home in the buggy. When they returned defendant was sitting on the porch or gallery, he having come to the house a few minutes before.

Clarence Humphrey testified, "That he was a son of deceased; was 11 years old. When Jones and father came back from town, I saw Jones had two pistols in his hip pockets; saw them while he was combing his hair at the glass. Dinner was ready, and they ate as soon as they could wash and get ready. Jones, father, Magruder and I ate at the table together. I heard nothing at the table between the parties. Father seemed nervous. After dinner, Magruder went out in the front yard, north of the house. Father and Jones went down to the old house; stayed awhile, and came back. When they came back Jones had only one pistol. Father sat down in the hall, and kept his hand and arm over his right pants pocket, in which I saw there was something, but could not tell what it was. Jones called mother to the door, and asked her where the 'rough on rats' was, and said father wanted him to ask her in his presence; that father thought she had put 'rough on rats' in his coffee at dinner. My mother told him she did not know where it was, and that there was none in his coffee. Jones asked, 'Where is the cup of coffee?' and mother said Lola, my sister, had poured it in the slop. Father then turned to Magruder, who was sitting on the gallery, and said, 'What in the hell are you doing with your hands in your

pockets?' Magruder said he had a right to have his hands in his pock-
ets.　After a little, father said he was going over to Mr. Wright's to
get him to come and settle things; and he asked Jones to go with him.
Jones told him to go ahead, and he would overtake him.　Jones went
into his room, and in a few seconds came out making a cigarette, and
went on down towards the old house.　While Jones was in his room,
Magruder went out of the yard gate and waited a little while, and Jones
overtook him at the gate, and they went on down to the old house to-
gether.　When they got to the old house, they all three started off
from the old house, towards the road leading to Lum Wright's, and I
went into the house, and saw no more of them until the shooting.　I
was in the bed-room, with my mother and two sisters.　When I heard
the first shot I ran out on the south porch, and saw Magruder and Jones
down by the old house.　I saw Magruder shoot.　Did not see my father.
Magruder was pointing his pistol southeast, towards where I afterwards
saw my pa's body lying.　Jones was a little west of south of Magruder,
but don't know how far away.　I ran back into the house and came out
again, and saw Magruder and Jones coming towards the house, and
Jones had his hand on Magruder.　When they reached the house, Ma-
gruder said that he had killed my father; and that he had to do it; that
father was trying to shoot him with a pistol.　When they came to the
house, Jones had two pistols and Magruder had none.　Jones had Ma-
gruder under arrest, and was going to start to Gainesville with him,
when mother asked him to go and get some of the neighbors to come in
before he went off.　Jones went out and stopped some men passing the
road, with a wagon of cotton seed.　When he went out to the road to
the wagon, he left Magruder on the porch, and he sat there until Jones
and the men came in; and then all went down to the body together.　In
a few minutes Jones and Magruder came back to the house and then
went to Mr. Wright's, about a quarter of a mile south of us."

Biggerstaff and Sims, the two men with the wagon load of cotton
seed, testify that when they reached the body they saw no pistol on
the deceased; and the evidence of these witnesses and others tends
strongly to show that afterwards defendant or Jones placed a pistol in
the pocket of deceased, which was subsequently seen by Wright and
others, sticking in his pocket; was found to be fully loaded, and was also
identified as the pistol looked at and examined by Jones and another
man in town that morning, and a short time thereafter bought by the
other man.　The theory of the State was, that Jones, though ostensibly
acting as a friend of deceased and endeavoring to prevent a difficulty,
was, in fact, a promoter and fomenter of the trouble, and acting all the
time with and in the interest of defendant.　The circumstances going to
establish this theory, and which led to the conviction of Jones, as a prin-
cipal to the murder, need not be repeated here.

At the trial Mrs. Humphrey, widow of deceased, testified as a wit-
ness for defendant, and on cross-examination admitted that she had

agreed to secure the payment of the fee of counsel who had been employed to represent the defendant on this trial.

The court's charge upon manslaughter, which is complained of, is copied into the opinion. One of the grounds of defendant's motion for new trial, was newly discovered evidence of the fact that the woman, Henrietta Humphrey, was not, in fact, the lawful wife of deceased, though they had lived together as man and wife for years, and had raised a family.

*R. V. Bell* and *Walton & Hill*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE—Appellant was convicted in the court below of murder in the second degree, and given a term of thirty years in the penitentiary. From the judgment and sentence of the lower court he prosecutes this appeal. There were two parties indicted for the murder of George Humphrey in this case, to-wit: Elmer Jones and appellant, Magruder. A severance was had in the case, and Elmer Jones put on trial first. The jury returned a verdict in the Jones case on the 10th day of December, finding him guilty of murder in the second degree. Appellant's trial came up on the 13th day of December. He announced "ready," and went to trial, and the trial proceeded until the 18th day of December, when he craved a postponement of the case for the testimony of Elmer Jones, his co-defendant, who, as already stated, had been previously convicted of murder of the second degree. The court very properly refused this request. The State introduced evidence in this case of the acts and declarations of said Elmer Jones, made at Gainesville the day before, or the day of the killing, with reference to the purchase of pistols, and proved by said witnesses, Reagan and Shoppmeyer, the purchase of said pistols by Jones. By Sheriff Ware, the State also proved that Jones came to him the day of the homicide, and before it occurred, and asked to be appointed deputy sheriff, and stated that he apprehended a difficulty between Magruder, the appellant, and Humphrey, and that he wanted authority to arrest one or both of them. This testimony was objected to by the appellant, on the ground that no conspiracy had been proven between Jones and Magruder, to take the life of the deceased, George Humphrey. We have examined the record on this question, and, in our opinion, there was sufficient evidence of the conspiracy to admit the acts and conduct of the said Jones pending said conspiracy and before its commission, and in furtherance thereof. It is not necessary here to enumerate the facts, and, moreover, the court in its charge clearly and explicitly directed the jury as to this testimony, telling them that, if they found that there was no conspiracy between Jones and Magruder, to utterly disregard all of the acts and declarations of said Jones, made to said witnesses. The State was permitted to ask Mrs. Henrietta Humphrey, who was placed on the stand by the appellant, on her cross-examination, the following questions:

"Are not your feelings on the side of the defense, and do you not want to see him acquitted?" And, on her answering that she did not want, under the circumstances, to see the appellant punished, that she thought he was innocent, and that her feelings were on that side of the case, the State's counsel then asked the question of said witness: "Have you not paid, or promised to pay, R. V. Bell's fee in this case for defending appellant?" Appellant's counsel objected to this question, because the witness had admitted her bias, and said the circumstance was inadmissible and irrelevant, and only caculated to prejudice the appellant before the jury. The court overruled this objection, and permitted her to answer that she had agreed to secure the counsel fees in the case in the event of an acquittal. To this proceeding the appellant excepted. In this case the wife of the deceased stands as any other witness, and was subject to the same character of cross-examination, and it was admissible to ask her any question the tendency of which was to impeach her credibility; and the fact that she had agreed to pay the fee for defending the man who had slain her husband, it occurs to us, was a very material circumstance as going to the weight of her testimony.

Appellant complains of the court's charge on manslaughter, said charge being as follows: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, J. A. Magruder, in Cooke County, Texas, at any time prior to and within three years of the 3rd day of November, 1894, did unlawfully kill George Humphrey by shooting him with a pistol, but that, at the time of the killing, he, the said defendant, was by some adequate cause moved to such a degree of anger, rage, sudden resentment or terror as to render him incapable of cool reflection, and that in such state of mind, and not in his lawful self-defense, he killed the said George Humphrey, then you will find the defendant guilty of manslaughter, and assess his punishment at confinement in the penitentiary for any time you see proper, not less than two nor more than five years; and in determining the defendant's state of mind at the time of the killing, you will view the acts and conduct of said Humphrey at the time of the killing in the light of and in connection with all the other facts and circumstances in evidence before you." Appellant claims that this charge is too restrictive, in that it does not permit the jury to look to acts and conduct of Jones in that connection. The acts and conduct of Jones were in evidence before the jury, hence constituted a part thereof; and the charge of the court in question specially authorized the jury to look to all the facts and circumstances in evidence before them. We have examined them, and, in that connection, the court's charge, and we find the same comprehensive, and covering every material phase of the case presented by the evidence; so that none of the charges asked, if they were otherwise correct, were necessary to be given. Appellant insists that a new trial should have been granted him in this case because of the newly discovered evidence, to-wit: that Mrs. Henrietta Humphrey was not in fact the wife of the deceased; and he introduced an affidavit tending to show this fact, and that it was

newly discovered. If this be true, we fail to see in what respect it would benefit the appellant. The evidence shows that he regarded her as the wife of the deceased, and that he lived in the family a number of years, and was, in fact, her cousin. From his standpoint, so far as his rights are concerned, they are to be regarded as man and wife. The fact that they were unmarried, if this be true, but that he was ignorant of this, and regarded them as lawfully married, rendered this newly discovered evidence wholly immaterial. There being no error in the record, the judgment is affirmed.

*Affirmed.*