SHELBY SWANNEY v. THE STATE.

No. 1718.   Decided April 17, 1912.

**1.—Murder—Writ—Return—Jury and Jury Law.**

Upon trial of murder, there was no error in permitting the sheriff, on motion of the district attorney, to make his return on his writ summoning the jurors, and serving defendant with a copy thereof in due time.

**2.—Same—Evidence—Weapon.**

Upon trial of murder there was no error in permitting the State's witnesses to testify that they went to the place where deceased lay, about thirty minutes after the killing, and that they saw no weapons of any character on or about deceased.

**3.—Same—Evidence—Husband and Wife.**

Where, upon trial of murder, the defendant placed his wife on the witness stand to show that her husband was not the father of her child, and that she told him of this just before he went to the scene of the homicide, there was no error in permitting the State, on cross-examination, to show that she had told defendant of these matters prior to the day of the killing, by laying the predicate to impeach her by another witness.

**4.—Same—Rule Stated—Cross-Examination of Wife.**

The wife of the defendant may be cross-examined as to all matters testified to by her on her direct examination, and she may be asked questions tending to test the accuracy of her direct testimony as to all matters germane thereto. Following Dobbs v. State, 54 Texas Crim. Rep., 550, and other cases.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained the conviction of manslaughter, under a proper charge of the court, there was no error.

Appeal from the District Court of Hopkins. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The State's testimony showed that the defendant shot and killed deceased; that there were no weapons of any kind found near the deceased; that the deceased was shot while he was plowing in the field right along the turn row, and that defendant fled after the occurrence.

The defendant testified that after his wife told him that the deceased was the father of her child, which he had never known or heard before, he believed her statement which excited him, and that shortly thereafter, he started to the field where deceased was plowing to ask him about this matter, and that when he did so, deceased dropped his head and his lines and said he would kill defendant's wife and also kill defendant, making a move toward his pocket; that he started towards the house; that this excited defendant and he shot him twice; that he fled because he was urged to do so, but that he finally returned and gave himself up.

C. E. Sheppard, for appellant.—On question of cross-examination of wife: Young v. State, 59 Texas Crim. Rep., 137, 127 S. W. Rep., 1058; Yeiral v. State, 56 Texas Crim. Rep., 267, 119 S. W. Rep., 848; Stewart v. State, 52 Texas Crim. Rep., 273; 106 S. W. Rep., 685; Jones v. State, 40 S. W. Rep., 807; Marsh v. State, 54 Texas Crim. Rep., 144, 112 S. W. Rep., 320; Merrett v. State, 45 S. W. Rep., 21; Gaines v. State, 42 S. W. Rep., 385; Welch v. State, 46 S. W. Rep., 812; Young v. State, 54 Texas Crim. Rep., 417, 113 S. W. Rep., 276; Smith v. State, 44 S. W. Rep., 520; Messer v. State, 63 S. W. Rep., 643.

C. E. Lane, Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was indicted, charged with murder; when tried, he was convicted of manslaughter and his punishment assessed at two years in the penitentiary.

It appears that the court on the 4th of September, set this case for trial on September 14, 1911, and on the fourth ordered a venire of fifty men drawn, and made the writ returnable on September 11. The sheriff on the 11th, filed the writ with the clerk without having made

a return thereon. On the 12th the district attorney filed a motion asking permission for the sheriff to make his return on the writ, and for an order requiring him to do so. The court granted the motion, and the sheriff made his return, and the defendant was served with a copy thereof on that day. This presents no error.

In his next two bills of exceptions appellant complains that the court permitted J. D. Wooley and W. B. Latta to testify that they went to the field where deceased lay, and that they saw no weapon of any character on or about deceased. Wooley testified that it was about thirty minutes after deceased was killed before he arrived at the place where the body was found, and Latta that it was two hours or more after the killing took place before he arrived. He was the Justice of the Peace, and testified he found no weapon of any kind. Appellant's objections were that the evidence showed that other people had been to the scene of the homicide prior to the arrival of these two witnesses. The State placed on the stand Lee Walden who testified he was the first person to go to the deceased, and that he saw no weapon; by G. H. Vick that he was the second person at the body of his father, and he saw no weapon—in fact, every person who testified for the State says deceased had no weapon. The court did not err in overruling the objections. The objection might go to its weight, but not to its admissibility.

Appellant placed his wife on the witness stand who testified at the instance of appellant that she gave birth to a child on the 6th of January, and that her husband (defendant) was not the father of her baby. That on the morning of the killing she had talked to appellant, and had talked to him just before he went to the field where her father was at work and that she at that time told him that her father (deceased) was the father of her child. The bill shows that the following questions were asked her by the defendant and she made the answers given: "Q. Did you see Shelby Swanney there that morning? A. Yes, sir. Q. Did you talk with him? A. Yes, sir. Q. Did you talk with him about this baby and about who was its father? A. Yes, sir. Q. Did you tell who was its father? A. Yes, sir. Q. How long before the killing was it that you told him? A. It was that morning. Q. About how long before the killing? A. Why, it wasn't long, just after I told him he went down there. Q. Who did you tell him was the father of this child? A. My father. Q. Turner Vick? A. Yes, sir. Q. He is the man that was killed? A. Yes, sir. Q. Was that the truth? A. Yes, sir." On cross-examination the State was permitted to ask her if she had not told the defendant prior to the day of the killing that deceased was the father of the baby, and she answered she had not, but said that that morning just before the killing was the first time she had told him. She was then asked if on the day of the killing she had not told Jesse Butler that she had informed the defendant that her father was the father of her baby a month prior to the killing, which she denied, and she further denied

making a statement in writing to the effect "the first time I told defendant or anyone else except my father, that my father was the one who got me in a family way was the first Tuesday in April, 1911," about a month before the killing. The State proved by Jesse Butler that the witness had made such statement to him, and the State introduced the written statement to prove that she had so stated. All of this was objected to by defendant on the ground that it was a cross-examination about a matter not inquired about by him on direct examination. Counsel in his argument frankly stated to this court that his object in proving by defendant's wife that she told defendant about it on that morning was to reduce the offense, if any, to manslaughter, and by this system of examination create in the minds of the jury that this was the first time she had told her husband. If the question and answer would create that impression in the minds of the jury, and was elicited for that purpose, certainly it was permissible for the State to show its falsity, and show that at another time and place she had made a different statement in regard to the same matter. The information sought by defendant was *how long before the killing was it that she told her husband,* and the State by its questions sought to elicit the same information. The defendant desired to prove that he had killed deceased the first time he met him after receiving such information; the State desired to prove that such was not the fact, and it all related to the same matter, and there was no error in permitting the cross-examination. This court has held that a wife may be cross-examined as to all matters testified to by her on her direct examination, and ask questions tending to show the accuracy of her direct testimony and may apply the usual tests of cross-examination as to all matters germane and pertinent to her direct examination. Dobbs v. The State, 54 Texas Crim. Rep., 550; Exon v. State, 33 Texas Crim. Rep., 468; Creamer v. State, 34 Texas, 173; Buchanan v. State, 41 Texas Crim. Rep., 127; Merritt v. The State, 40 Texas Crim. Rep., 359; Hampton v. State, 45 Texas, 154; Shelton v. State, 34 Texas, 663; Magruder v. State, 35 Texas Crim. Rep., 214.

This disposes of all the bills of exceptions in the record, and the grounds in the motion criticising the charge of the court are not well founded. The court in an admirable charge presented every phase of the case, and correctly applied the law to the evidence adduced.

The judgment is affirmed.

*Affirmed.*