## EARL DIXON v. THE STATE.

### No. 6508.  Decided January 25, 1922.

### Rehearing Denied March 8, 1922.

#### 1.—Murder—Continuance—Diligence—Materiality of Testimony.

Where defendant's application for continuance showed proper diligence, that absence of his witness was not due to any fault of the defendant and the testimony was material, there was reversible error to refuse it, especially where the absent testimony would support the defendant's defense, otherwise resting on his own testimony.  Following Beard v. State, 55 Texas Crim. Rep., 158, and other cases.

#### 2.—Same—Continuance—Rule Stated—Motion for New Trial.

The rule which should govern the trial court in passing, first, upon an application for continuance and subsequently upon a motion for new trial, is, if there is such a conflict between the culpatory facts and those set forth in the application as to render it improbable that the facts stated in the application are material and probably true, the continuance should be refused, and also a new trial based upon such refusal should be denied.  There must, however, not only be such a conflict but the inculpatory facts should be so strong and convincing as to render the proof of the facts set forth in the application improbable.  Following Bronson v. State, 59 Texas Crim. Rep., 17, and other cases.

#### 3.—Same—Special Venire—Irregularity of Return—Practice in Trial Court.

In making his return on the special venire writ, the sheriff gave a list of those summoned, but left blank a space corresponding with the name and number of three of the veniremen.  One of the missing veniremen attended, one filed an affidavit of exemption and one was shown to have been out of the county and not served for that reason, and where a correct list of the jurors summoned was served upon the defendant, and the trial was postponed for one full day, after the service, there was no reversible error.  Following Whittington v. State, 86 Texas Crim. Rep., 1, and other cases.

#### 4.—Same—Special Venire—Exempt Jurors.

While the law does not contemplate that persons summoned to serve on a special venire shall be excused by the court without the consent of the accused except for some reason exempting such person from jury service, and upon a written affidavit filed with the clerk exists, the juror should be excused, but the court cannot excuse the juror unless such affidavit is filed. However, in the instant case, injury is excluded and there is no reversible error.  Following Campbell v. State, 30 Texas Crim. App., 645, and other cases.

#### 5.—Same—Evidence—Bill of Exceptions—Part of Testimony Admissible.

In the absence of a sufficient bill of exceptions, the complaint of defendant to the admission of certain evidence showing the conduct of the wife of the deceased, cannot be considered on appeal.  Besides, it is the general rule that where a part of the statement is admissible, a bill complaining of a ruling of the trial court in admitting the whole is too general.  Furthermore, in the instant case, the conduct of the deceased and his wife towards each other and their relation, which were known to the defendant, being so intimately connected with the state of the mind of both the defendant and the deceased, such testimony was admissible in evidence.

**6.—Same—Charge of Court—Provoking Difficulty—Going Armed.**

There being no charge to the jury upon the issue of provoking the difficulty, and no requested charge limiting or qualifying the right of perfect self-defense, there was no error in the court's failure to instruct the jury that the defendant had a right to arm himself, etc., following Williford v. State, 38 Texas Crim. Rep., 393, and other cases.

**7.—Same—Rehearing—Continuance—Motion for New Trial.**

Where the record showed on appeal that by the absent witness threats of deceased to take the life of appellant would have been shown, and also the fact of the communication of such threats to the accused, prior to the fatal encounter, the continuance should have been granted, as also the motion for new trial thereon.

Appeal from the District Court of Angelina. Tried below before the Honorable L. B. Guinn.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Denman & Collins*, for appellant.—On question of continuance: Giles v. State, 231 S. W. Rep., 765; Dunn v. State, 212 id., 511; Hollingsworth v. State, 182 id., 466; and cases cited in opinion.

On question of special venire: Harrison v. State, 3 Texas Crim. App., 558; Thomas v. State, 138 S. W. Rep., 1018; Counts v. State, 181 S. W. Rep., 723; Kennedy v. State, 19 Texas Crim. App., 618; Bates v. State, 19 id., 123.

On question of conduct and acts of deceased's wife: Blaine v. State, 26 S. W. Rep., 63; Loggins v. State, 8 Texas Crim. App., 441; Pollard v. State, 125 S. W. Rep., 390.

On question of going armed: Shannon v. State, 28 S. W. Rep., 687; Cartwright v. State, 14 Texas Crim. App., 502; Stewart v. State, 106 S. W. Rep., 689;

*R. G. Storey*, Assistant Attorney General, and *I. D. Fairchild*, for the State.—On question of continuance: Knight v. State, 183 S. W. Rep., 1158; Thomas v. State, 189 id., 139; Bell v. State, 224 id., 1108; Russell v. State, 228 id., 918; Slaughter v. State, 230 id., 172;

On question of jury and jury law, and special venire: Jones v. State, 214 S. W. Rep., 222; and cases cited in opinion.

MORROW, PRESIDING JUDGE.—The judgment condemns appellant to confinement in the penitentiary for a period of twenty-five years for the offense of murder.

Jim Havard was shot and killed by the appellant, the weapon used being a shot-gun loaded with buckshot.

Besides murder, the issues of manslaughter and self-defense were submitted.

The deceased was the husband of appellant's sister and the father of her six living children. Appellant was twenty-four years of age, and on the day before the homicide had from his mother received information that the deceased had impeached the chastity of his wife, charging that she submitted her persons to negroes. On the following morning, he procured a gun and shells and went to the home of the deceased.

The family consisted of the deceased, his wife, a son, twenty years of age, a daughter, sixteen years, another thirteen years, and two younger ones who did not testify. All of these spent the night at the Havard home and all save the son were there at the time of the homicide. The son, a short time before the homicide, had been invited by the brother of the appellant to go and examine some stock at his home and was there at the time his father was killed.

According to the daughters of the deceased, appellant came to the home and invited the deceased to go hunting with him. This was declined and a short conversation followed, the deceased sitting in a rocking-chair which was on the porch. Reference was made by the appellant to the controversy pending between the deceased and his wife, touching the change of locality, and the deceased referred to the troubles previous and pending between himself and his wife and said that he had used his best endeavors to please her and offered to divide the property with her, and the appellant, with an oath, said that he (deceased) had been accusing her and was doing so for the last time; that he raised his gun and fired twice, striking the deceased in the neck; that no demonstration was made by the deceased and no threat uttered by him.

The version of the appellant is that he sought the deceased for an explanation of his insulting conduct towards his wife, a sister of the appellant; that he armed himself for protection, the deceased being a dangerous man and having, according to the information received by the appellant, expressed the intention to kill him. After conversing for some moments, appellant referred to the accusations that he had learned the deceased had made against his wife. The deceased became very angry, cursed the appellant and said he would kill him; that he threw his right hand to his hip pocket as though he was going to draw a pistol or some other weapon. Appellant, believing that he was going to be killed by the deceased, fired the shots.

A first application for a continuance was overruled and an exception was duly reserved and the matter was again presented in the motion for new trial. Pitman, one of the witnesses, would have testified, according to the averments therein, that about a week prior to the homicide, the deceased endeavored to borrow a pistol from him, appeared angry and referred to his wife, stating in substance that he had lived in hell with her for twenty years and would not put up

with the "damn bitch" any longer; that she and her brothers wanted to run him off and get his property; that he did not intend to leave but would kill them all; that appellant was the only one with whom he had not had trouble and that he was the only one who had nerve enough to fight him, and that if he fooled with him or tried to take up his sister's troubles he would kill him; that he would kill any son-of-a-bitch who would take sides with a woman like his wife against him, and try to get his property; that these declarations of the deceased were communicated to the appellant on the second day preceding the homicide.

On the trial of the case the appellant testified to the communication of these matters to him by the witness Pitman. No other witness testified to the same or similar facts. It was shown, however, that the relations between the deceased and his wife had long been unfriendly and that she had made frequent threats to take his life. This testimony was developed by the state. No reason is given for overruling the application save that the court, in qualifying the bill, says that most of the other witnesses named in the application were present and testified. It was not claimed in the application, however, that any of them save the witness Pitman would have testified to threats.

Touching the diligence, the facts are these: The indictment was filed on the 8th of April, the trial began on the 12th of May, and was concluded on the 16th; subpoena for the witness, who resided in the county, was issued on the 11th of April and duly served, as shown by the return of the sheriff made on the 25th day of April. The motion was presented on the 12th of May, and the court announced that he would overrule it. Defect in the service of veniremen resulted in delay of one day proceeding with the trial; the motion was then renewed, appellant in the meantime having procured an attachment for the witness directed to Harris County where, according to the averments made in representing the motion on the 14th of May, the witness was temporarily located. The state did not exercise its right to controvert the facts showing diligence nor the probability of securing the testimony of the witness by delay. This it might have done if the averments were not true. Roquemore v. State, 54 Texas Crim. Rep. 594; Branche's Ann. Texas Penal Code, Sec. 321.

We discern no defect in the diligence nor does the record suggest, so far as we are able to perceive, that the absence of the witness was due to any fault of the appellant. There is no lack of diligence shown which would authorize the refusal to grant the motion. Donahoe v. State, 28 Texas Crim. App. 13; Mapes v. State, 14 Texas Crim. App. 134; Branch's Ann. Texas Penal Code, Sec. 318; Giles v. State, 89 Texas Crim. Rep. 441; 231 S. W. Rep. 767. Moreover, the evidence of the absent witness being to support the appellant's defense otherwise resting upon his own testimony, the application is one to which the rule of diligence is not so strictly applied as in some other

instances. Koller v. State, 36 Texas Crim. Rep. 499; Beard v. State, 55 Texas, Crim. Rep. 158; Mitchell v. State, 36 Texas Crim. Rep. 278; Duffy v State, 67 S. W. Rep. 420; Day v. State, 62 Texas Crim. Rep. 452; Branch's Ann. Tex. Penal Code, Sec. 319 and 329.

In submitting the case to the jury, the court instructed, in connection with self-defense, upon the law of apparent danger, and also specifically instructed upon the law of communicated threats. These phases of the case rested solely upon the testimony of the appellant. Obviously, it was material to the appellant that there be testimony other than his own that the threat had been communicated to him. Upon this subject, the language of Presiding Judge Hurt, in the case of Gilcrease v. State (33 Texas Crim, Rep. 629), is pertinent. For quotation and authorities, see Dunn v. State, 85 Texas Crim. Rep. 299.

It is truly said by counsel for the state that a continuance is not a matter of right. It is equally true that the discretion of the trial court to overrule it is not absolute, and in re-considering the action upon hearing the motion for new trial, the sufficiency of the application for a continuance in the way of diligence, materiality and probable effect on appellant's case are matters for the consideration of the court. Harris v. State, 18 Texas Crim. App. 287; Bronson v. State, 59 Texas Crim. Rep. 17; and other cases listed in Vernon's Texas Crim. Statutes, Vol. 2, pages 321-322. In one case it is said:

"The rule which should govern the trial court in passing, first, upon an application for continuance, and subsequently upon a motion for a new trial is, if there is such a conflict between the inculpatory facts and those set forth in the application as to render it improbable that the facts stated in the application are material and probably true, the continuance should be refused, and also a new trial based upon such refusal should be denied. There must, however, not only be such a conflict, but the inculpatory facts should be so strong and convincing as to render the truth of the facts set forth in the application improbable." McAdams v. State, 24 Texas Crim. App. 86; Hollis v. State, 9 Texas Crim. App. 643. This rule, we understand, has been substantially affirmed and applied in many cases. Duffy v. State, 67 S. W. Rep. 420; Yantes v. State, 49 Texas Crim. Rep. 404; Mitchell v. State, 36 Texas Crim. Rep. 306; Branch's Ann. Tex. Penal Code, Section 335 and 338.

We have been unable to discern anything in the record upon which there might be justly founded a conclusion that the purported evidence of the absent witness was not probably true. It is in consonance with appellant's testimony; it is contradicted by no witness for the State; no suspicion is thrown upon the good faith of the application. It is not suggested that the witness was a fictitious person. The contrary appears from the return of the sheriff serving the subpoena. The setting and circumstances of the case do not seem to us to render it improbable that the deceased had made remarks similar to those attributed to him in the motion for a continuance. It appeared from

the testimony of the state's witnesses that the deceased and his wife occupied separate rooms; that they were unfriendly; that the wife refused to speak to him; that there were families of negroes living nearby; that other members of the Dixon family had expressed ill will towards the deceased; that a short time before the homicide the wife of the deceased had gone to her brothers, leaving home in bad humor with the deceased; that she had cursed him and threatened to take his life on a number of occasions; that they did not eat at the same table; that she manifested hostility towards some of the children, made some of them leave home and said she was going to get a gun to kill the deceased.

In making his return on the special venire writ, the sheriff gave a list of those summoned, but left blank the space corresponding with the names and number of three of the veniremen. A motion to quash the venire upon this ground was made. One of the missing veniremen attended; one filed and affidavit of exemption and one was shown to have been out of the county and not served for that reason. The mere matter of an irregularity in the return of the sheriff is ordinarily not ground for quashing the writ. The precedents upon this subject are cited and reviewed at some length in the case of Whittington v. State, 86 Texas Crim. Rep. 1, to which we refer. A correct list of the jurors summoned having been served upon the appellant and the trial postponed for one full day after the service, his rights in this respect were fully conserved. Swanney v. State, 66 Texas Crim. Rep. 293, 146 S. W. Rep. 548; Ollora v. State, 60 Texas Crim. Rep. 217; Luster v. State, 63 Texas Crim. Rep. 541; Code of Crim. Proc., Art. 672, and authorities listed therein in Vernon's Texas Crim. Statutes, Vol. 2, p. 361.

The law does not contemplate that persons summoned to serve on a special venire shall be excused by the court without the consent of the accused except for some reason exempting such persons from jury service. If such exemption exists and the person desires to take advantage of it, he should appear in open court and testify to the facts or make written affidavit and file it with the clerk, as provided for by Article 676 of the Code of Crim. Procedure. See Crow v. State, 89 Texas Crim. Rep. 157; Clayton v. State, 83 Texas Crim. Rep. 57; Johnson v. State, 86 Texas Crim. Rep. 566; Gunn v. State, 234 S. W. Rep. 398; Bizzell v. State, 72 Texas Crim. Rep. 442.

In the instant case, some of the persons summoned were excused by the trial judge. As to all save one, however, we understand from the record, that there was a substantial compliance with the statute. This one was a state officer, and he informed the trial judge in advance of the trial that he wished to take advantge of his exemption, and to this the trial judge gave his assent, but required no affidavit to be filed. The appellant, when the name of the juror was reached on the list, insisted upon process for him. This was refused. The action of the court was erroneous, but probably not an adequate reason for

reversal. It was shown upon hearing of the motion for new trial that the facts establishing the exemption of the juror really existed; that he claimed his exemption and made this known to the court before the trial. The affidavit should have been demanded, and it occurs to us that when the question was developed upon the trial, prudence would have suggested that the state exercise a peremptory challenge and thereby eliminate the juror. Campbell v. State, 30 Texas Crim. App. 645; Rice v. State, 54 Texas Crim. Rep. 149. It was the right of the appellant to have the juror present unless, in excusing him, the procedure provided by law was followed. As stated above, we think the record, in the instant case, excludes the idea of injury, but a case might arise in which this would not appear.

There is complaint of the admission in evidence of testimony showing the conduct of the wife of the deceased, including her leaving the premises without viewing the body of the deceased and her threats to kill him; her harsh conduct towards the children and other details concerning the relations of the deceased and his wife antecedent to the homicide. Complaint is also made of the testimony of the conduct of the brother of appellant in inviting the son of the deceased to leave the premises. As these bills are drawn, no error is shown. Much of the testimony involved was manifestly admissible. It is a general rule that where a part of a statement is admissible and a part subject to objection, a bill complaining of the ruling of the trial court in admitting the whole is too general. It should segregate and point out that which is claimed should have been excluded. When the objection is directed to the whole statement, a part of which is admissible, it is not the duty of the trial judge to segregate it but he has the privilege to overrule the objection. Branch's Ann. Texas Penal Code, Section 211.

We will add with reference to the bills in question that apparently the manner in which the case was conducted left open the right to prove practically all of the matters that are embraced in the bills. That is to say, the conduct of the deceased and his wife towards each other and their relations, which were known to the appellant, are so intimately connected with the state of the mind of both the appellant and the deceased as to render them relevant.

There being no charge to the jury upon the issue of provoking the difficulty and no instruction limiting or qualifying the right of perfect self-defense, there was no error in the court's failing to instruct the jury that the appellant had a right to arm himself and seek the deceased for an explanation of his insulting conduct towards the appellant's sister. Williford v. State, 38 Texas Crim. Rep. 393; Alfred Smith v. State, 81 Texas Crim. Rep. 369.

Because of the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

March 8, 1922.

LATTIMORE, JUDGE.—The reversal of this case was ordered chiefly for the error of the refusal of a continuance. By the absent witness threats of deceased to take the life of appellant, would have been shown, and also the fact of the communication of such threats to the accused prior to the fatal encounter. Article 1145 of our Penal Code expressly makes proof of threats admissible when one accused of homicide seeks to justify his act upon the ground of self-defense; and in every such case testimony that threats have been made and communicated to the prisoner, is considered competent. In the instant case appellant claimed self-defense, and that he shot deceased to prevent the latter from shooting him. He testified to a demonstration on the part of deceased, from which, if threats had in fact been made by deceased to kill him, it might be inferred that the threatened attack had then begun. There was a direct conflict between the testimony of the accused and that of the State witnesses on the question of whether the deceased made any demonstration prior to the time appellant fired the fatal shot. Such conflict strengthens the reasoning upon which must rest the right of the accused to the continuance sought. He testified that in immediate connection with the fatal killing he remonstrated with deceased for his conduct toward the wife of deceased, who was the sister of appellant, and to the fact that deceased said he would then kill him, and that he made a demonstration to get a pistol, and that because of such facts he shot and killed deceased. The State witnesses denied these facts. If shortly before said time deceased had tried to get a pistol from the absent witness, saying that appellant had nerve, and that he would take no chances with him but would kill him if he attempted to take the part of appellant's wife against him, this would not only be admissible but if believed by the jury must needs have greatly strengthened their belief in appellant's theory of the killing.

So believing we adhere to our view that the continuance should have been granted, and the state's motion for rehearing will be overruled.

*Overruled.*