## CHARLEY CARTER v. THE STATE.

No. 2855. Decided March 25, 1914.

**1.—Assault to Murder—Suspended Sentence—Indeterminate Sentence Act.**

Upon trial of assault to murder, it was reversible error not to submit defendant's plea seeking a suspension of the sentence, etc., as the former Indeterminate Sentence Act, even if not void, did not repeal the Suspended Sentence Act, as both could have stood together; besides, the later Act of August 8, 1913, expressly provides that it shall not repeal or limit the Suspended Sentence Act of February 11, 1913.

**2.—Same—Evidence—Co-defendant—Remarks by Judge.**

Upon trial of assault to murder, there was no error in not permitting the codefendant to testify in behalf of the defendant and reprimanding counsel for offering such testimony.

**3.—Same—Evidence—Rebuttal—Not Self-serving Declaration.**

Where, upon trial of assault to murder, the State claimed that the defendant and others waylaid the party assaulted, which defendant denied and claimed that the meeting of himself and his brother with the parties injured was accidental, he should have been permitted to show his theory of the case by the declaration of his brother with reference to his movements.

**4.—Same—Charge of Court—Simple Assault.**

Where upon trial of assault to murder, the court properly charged the law applicable to the facts, there was no error in refusing a requested charge of the defendant which were not applicable to that case, including one on simple assault, which was not raised by the evidence.

Appeal from the District Court of Eastland. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of assault with intent to murder; the verdict

fixing no punishment, the court sentenced defendant for a term of years not less than two nor more than fifteen years imprisonment in the penitentiary.

The opinion states the case.

*J. R. Stubblefield* and *S. W. Bishop,* for appellant.—On question of refusing charge on suspended sentence: Baker v. State, 70 Texas Crim. Rep., 618, 158 S. W. Rep., 998; Martin v. State, 71 Texas Crim. Rep., 212, 158 S. W. Rep., 994; Brown v. State, 71 Texas Crim. Rep., 212, 158 S. W. Rep., 807; Roberts v. State, 71 Texas Crim. Rep., 79, 158 S. W. Rep., 1003; Munroe v. State, 70 Texas Crim. Rep., 245, 157 S. W. Rep., 154; Johnson v. State, 161 S. W. Rep., 1098.

On question of declarations of codefendant: Johnson v. State, 29 Texas Crim. App., 150; Jackson v. State, 55 Texas Crim. Rep., 79.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for an assault with intent to murder John Lantron.

The record shows that before the trial began, under the Act of February 11, 1913, p. 8, appellant duly filed a sworn plea in accordance with the statute, seeking a suspension of his sentence in the event he was convicted and his punishment fixed at five years or less in the penitentiary. He asked a special charge submitting this issue to the jury, which the court refused to give, to which he excepted. He also excepted to the charge of the court because not submitted by the court in his main charge, and reserved the point by his motion for new trial. It seems the court was of the opinion that the Indeterminate Sentence Act of April 3, 1913, p. 262, passed at the same session of the Legislature as the previous Act above noted, repealed the said first Act, and hence refused to submit the question at all to the jury. In this the court was in error, which necessitates a reversal of this judgment. This court, in repeated decisions, has held that the said Indeterminate Sentence Act was void. Ex parte Marshall, 72 Texas Crim. Rep., 83, 161 S. W. Rep., 112. Whether void or not, it did not repeal the said Suspended Sentence Act. The two Acts, without question, if the latter had been valid, should have been construed together and both could stand, and the latter did not repeal the former. However, the said Act of April 3, 1913, has been entirely substituted by the Legislature by the Act of August 8, 1913, p. 4, passed at a Special Session of the same Legislature. Section 10 of the last Act expressly states that it shall not in any manner be held to in anywise repeal, limit, or affect said Act of February 11, 1913, p. 8.

Dave Carter, the brother of appellant, was in the same fight and the evidence shows, an active participant therein with the appellant. The grand jury indicted him at the same time it indicted appellant. Unquestionably from the State's viewpoint, both by the indictment and the evidence, Dave Carter was a principal, or an accomplice in the same offense

with which appellant was charged.  Under such circumstances our stat-
ute expressly provides (article 791, C. C. P.) : "Persons charged as
principals, accomplices, or accessories, whether in the same indictment, or
different indictments, can not be introduced as witnesses for one an-
other."  This is peremptory and the trial judge has no discretion to vio-
late it in the trial of a case.  Appellant, by his attorney, offered before
the jury on the trial of the case to introduce Dave Carter as a witness
for appellant.  The court himself refused to permit this and repri-
manded appellant's attorney also in the presence and hearing of the
jury for so offering said witness, and he also complimented the attorney
for his knowledge in criminal law and his long experience in the practice
thereof.  Of course, it is to be regretted that such matters should be in-
jected into the trial of a case.  But appellant's bill, as to this matter,
does not show any error in the action of the court· under the circum-
stances.

The State's case would show that prior to the alleged assault one of
the brothers of appellant had had a fight with one of John Lantron's
brothers in which John Lantron's brother was cut by appellant's brother
and appellant's brother beat up.  The assault in this case was shown to
have occurred about midnight or after one Saturday night,—a dark,
drizzly, rainy night; that the three Lantron brothers were going home
from their father's with the three Free young ladies, the brothers' sis-
ter accompanying them; that appellant caught up·with them and not
only, in effect, insulted the Lantron brothers' sister, without any provo-
cation, but also used in her presence and in the presence of the other
young ladies, very·offensive epithets and cursed and abused the Lantron
boys and threatened, not only at that specific time, but later during the
same night, to do them serious bodily injury, if not kill them, and also
at the time stated to them that he would go and get his brother Dave
Carter and carry out his threat against them that night; that he did go
and get his brother Dave, waylaid the three Lantron boys as they were
returning from the Frees to their home and seriously and violently, and
without any provocation whatever, assaulted them, shot at and cut one
or more of them, and knocked down John Lantron with a piece of board
off of the bridge where they assaulted· them.  Appellant denied, in effect,
most all of this and claimed that the meeting of him and his brother
Dave with the three Lantron boys at the place where they assaulted them
and where the fight occurred, was by mere accident.  While this was his
contention, the great preponderance of the evidence on this point was
in favor of the State and against appellant.  Under these circumstances,
as tending to support appellant's said testimony and theory, he offered
to prove, in effect, by two witnesses that Dave Carter, when he left where
he was that night, stated that he was going to his father's to stay the
balance of the night, it then being about 1 o'clock at night.  On objec-
tion by the State, the court excluded this testimony and qualified appel-
lant's bills on the subject by stating that about 11:30 o'clock of the
night of the assault, while the Lantron boys were returning from a social

gathering with their sister and other young ladies, appellant rode up and after some conversation threatened to shoot one of the Lantrons and called him a damn son-of-a-bitch; that Russell testified that when appellant was leaving he told the Lantrons that he was going to wake up his brother Dave and with him go back to the bridge, where the fight occurred; that when the Lantrons were passing this point at the bridge that night, returning home, Dave Carter assaulted one of them about midnight and drew a pistol on him, and that appellant shot him, one of the Lantrons; and the court, therefore, held that Dave Carter's declarations, when he was leaving the house that night, was self-serving and inadmissible under the circumstances. The great preponderance of the evidence shown by this record was against appellant on this issue, yet, as we understand the law he was entitled to introduce this evidence, for it was for the jury to pass upon the issue and not the court, however improbable or untrue the court may have thought his declarations were at the time. See Branch's Crim. Law, sec. 337, and cases cited by him.

Appellant has several complaints to the court's charge and to the refusal of the court to give certain of his special requested charges. The court's charge, in our opinion, fairly and fully presented the issues to the jury and none of appellant's complaints thereto are well founded. None of his special refused charges should have been given.

The evidence, as presented by this record, does not raise simple assault and the court did not err in not submitting it.

For the error above pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*