SCRAP WHITE v. THE STATE.

No. 5051. Decided June 12, 1918.

**1.—Local Option—Limitation—Evidence—Res Gestae.**

Where, upon trial of a violation of the local option law, the main issue in the case was whether the same was barred by limitation, the defendant should have been permitted to show by a certain transaction which occurred between the witnesses and the parties that the date of the alleged sale was beyond the two years of limitation in misdemeanor cases, which showed a part of the res gestae and was not self-serving. Following Goeble v. State, 45 Texas Crim. Rep., 415, and other cases.

**2.—Same—Limitation—Charge of Court.**

Where, upon trial of a violation of the local option law, the date of the alleged sale became an important issue in the case, and the defense showed that

if the sale occurred it took place more than two years before the prosecution was instituted, this matter should have been specifically submitted to the jury in the court's charge on limitation.

Appeal from the County Court of Nacogdoches.    Tried below before the Hon. J. F. Perritte.

Appeal from a conviction of a violation of the local option law; penalty, a fine of fifty dollars and twenty days confinement in the county jail.

The opinion states the case.

*Arthur A. Seale,* for appellant.—On question of res gestae and limitation: Carter v. State, 73 Texas Crim. Rep., 334, 165 S. W. Rep., 200, and cases cited in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of violating the local option law, his punishment being assessed at a fine of $50 and twenty days imprisonment in the county jail.

The State's case is made by three witnesses, Milton Bell, John Dove and Isaiah Jackson. In substance they testified that they made up a purse with which to secure whisky, and that Milton Bell went to appellant's house and secured the whisky and came away; that they were all present at the house, but two of them did not see the purchase of the whisky or delivery of the whisky by appellant to Bell.

One of the main contentions is whether this offense was barred at the time of the filing of the complaint and information. In regard to the date of the purchase Milton Bell testified as follows in regard to limitation: "My mother died two years ago this coming February. (He was testifying at the January term, 1918, of the county court of Nacogdoches County.) I think that I bought this whisky in December before she died. I know that she has been dead two years this coming February. I can not be certain, but I believe it was after she died, but I am not certain. It might have been before she died, but it was in December all right." Then he denied making certain statements in the presence of Mr. Seale and Mr. Simpson with reference to the date of the purchase of the whisky in which he fixed the date of the purchase before his mother died, which would place the purchase in December, 1915, the complaint and information having been filed the 22nd of January, 1918. Mr. Simpson testified the other witnesses made a statement to Mr. Seale in his presence that the whisky was bought before the death of Milton Bell's mother. It seems that Milton Bell was related to appellant by marriage. He was the uncle of appellant's wife. The other two witnesses testified to practically the same facts as did the previous witness. Dove and Jackson, however, did not see the transaction between Milton Bell and defendant in which it was claimed the whisky was purchased. It seems, however, they were at appellant's

house at the time. Appellant's testimony is to the effect that in December, 1915, before the death of his mother in February, 1916, Bell and others came to his house, and Bell called appellant off into a room and wanted him to sell him some whisky, which he declined, and then he borrowed a bottle of whisky from him to be returned later. He loaned Bell a bottle of whisky to be returned, but which he had never done. Simpson and Seale were placed on the witness stand and contradicted Bell and the other witnesses with reference to the conversation had in Seale's office. They testified they heard these witnesses make the statement that they fixed the date of the transaction between Bell and appellant in December, 1915, because it was in connection with the death of the old lady, who died in February, 1916. All the witnesses who testified to the fact agree that this was the only time Bell, Dove and Jackson were at the residence of appellant in connection with any whisky transaction.

While Simpson was testifying appellant proposed to prove some matters by him which were rejected by the court on objection of the State. Simpson testified that one night about 8 o'clock, before Christmas of 1915, he was at appellant's house to secure his services to drive a team for the purpose of hauling logs, and when he got there Milton Bell, Isaiah Jackson and John Dove were present. Isaiah Jackson and John Dove were coming off the gallery and Milton Bell was coming out of the house. In this connection appellant further proposed to prove, and the witness would have sworn, upon his arrival at appellant's house and while Bell was leaving the house he asked defendant, White, what the negroes were doing there, and defendant, White, told him that Bell came to borrow some whisky for his mother; that she was sick, and that he let him have it; that this was in December, 1915. The bill with reference to this shows that defendant expected to prove, and that Simpson would have sworn, that he arrived at defendant's house while prosecuting witness Bell and Jackson and Dove were coming out of the house and off the gallery; that he, Simpson, asked appellant what those negroes were doing there, and appellant stated that Milton Bell had come to borrow whisky for his mother who was sick, and that he had loaned him a quart of whisky. Said witness would have further answered that this conversation took place about 8 or 9 o'clock, just before Christmas, 1915, while the mother of Milton Bell was ill. It is alleged this testimony was material to the defense, etc., and especially in connection with the fact that these witnesses stated they had never been at appellant's house together but the one time, and said statement of defendant to Simpson was admissible as being part of the res gestae, and was explanatory of his action, and explained why the prosecuting witnesses were at appellant's house, said conversation occurring at the time the prosecuting witnesses were leaving the house or immediately thereafter. We are of opinion that this evidence should have gone to the jury. If the transaction occurred just before Christmas, 1915, it was barred by limitation. This is one of the serious issues of the case. The State's

evidence was uncertain as to whether it was December before or December after the death of the woman. It was shown also that these three witnesses were not at appellant's house together except one time. Simpson was there on the night of their visit and saw them there, and just as they were coming out of the house or stepping off the gallery the conversation occurred between appellant and Simpson. This identifies the transaction as being the only occasion the parties were there as well as the time. If the evidence had gone before the jury it would have added strength to the theory of appellant that this whisky was given Bell on the Christmas before the death of the woman the following February, and this would have fixed the date of securing the whisky in December or just before Christmas, 1915. The court seems to have excluded this because it was self-serving and not part of the res gestae. We are of opinion it could not operate as self-serving. The witness Simpson was not aware of the fact that appellant had let the parties have any whisky except under his statement. This, it occurs to us, is part of the res gestae and did not come within the rule of self-serving declarations. His statement to Simpson was he had loaned the whisky to be paid for by Bell by a return of the whisky. This of itself would have constituted a violation under our decisions, and could have been used by the State from that viewpoint of the case as sustaining, or assisted in sustaining a sale by appellant to Bell. It could not be well prophesied by appellant or Simpson that the old lady was going to die in February, 1916, or that this prosecution would be commenced as late as January, 1917. The parties had just secured the whisky and were leaving the house, or had just stepped off the gallery. This took place more than two years before this prosecution began. We think it was explanatory and part of the res gestae of that immediate transaction. There are quite a number of cases supporting this view of the matter, some of which will be cited: Goeble v. State, 45 Texas Crim. Rep., 415; Johnson v. State, 29 Texas Crim. App., 150; Epson v. State, 29 Texas Crim. App., 607; Farrar v. State, 29 Texas Crim. App., 250;. Lewis v. State, 29 Texas Crim. App., 201; Shelton v. State, 11 Texas Crim. App., 36; McPhail v. State, 9 Texas Crim. App., 164; Carter v. State, 73 Texas Crim. Rep., 334. See also Branch's Crim. Law, sec. 337, for further citation of cases. We think this testimony, therefore, was admissible.

There is another question which ought not to arise upon another trial. The court's charge with reference to limitation was rather general. While we would not feel justified in reversing for this reason, yet upon another trial we are of opinion that the charge asked by appellant more nearly presents the question of limitation than did that given by the court. The jury should be told specifically that if the whisky was obtained about Christmas, 1915, they should acquit, or if they had a reasonable doubt they should acquit. This would have presented the matter specifically. The issue was sharply drawn with a preponderance of evidence in favor of the proposition that it was barred

by limitation, and that this transaction occurred about Christmas, 1915.
The judgment is reversed and the cause remanded.

*Reversed and remanded.*