CLYDE BROWN v. THE STATE.

No. 16427. Delivered April 11, 1934.
Rehearing Granted December 12, 1934.
Reported in 77 S. W. (2d) 694.

The opinion states the case.

*W. T. Davis*, of San Augustine, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for assault with intent to murder; punishment, one year in the penitentiary.

We have concluded upon more mature consideration that our former opinion was in error, and same is withdrawn.

It appears that a Mr. Barge had sold an automobile, upon which he retained a lien to secure the unpaid part of the purchase money. Legal proceedings had been instituted to foreclose this lien. The car seems to have come into the possession of Willis Murphy. On the night of the alleged assault, according to Mr. Barge, Willis and Earl Murphy, accompanied by appellant, entered the office of Barge. He said that the shot guns, which were presently displayed, were concealed when they came into his place. We set out the substance of his testimony. Almost immediately upon entering, Willis Murphy made a demand upon witness to know what he was going to do with the car referred to. Appellant and Earl produced their shot guns, and Willis proceeded to strike Barge on the head with a pistol, causing blood to flow into the eyes of Barge, temporarily rendering him unable to see. While in this condition he was hit on the hand with a shot gun, according to his belief, and also on the head. Willis Murphy then shot Barge with said pistol. Barge said from their actions and continued assault he thought they were going to kill him. They continued striking him with the butt of a shot gun after he fell to the floor. He feigned death and they left him.

Appellant testified that he had been out with the Murphy brothers all during the day. When they came to town that night he said he put a shot gun in the car and Earl Murphy put another in the car. They then came to town and ate supper at a restaurant. After finishing their meal he said they went up to Barge's place where Willis Murphy and witness got out.

He said they walked down the street a short way and then turned and came back, he, appellant, being a few feet behind Murphy. When they got back to Mr. Barge's place they went in. Appellant said he stayed near the door, and that an argument ensued between Barge and Murphy over the car. Appellant said Barge put one arm down by his side, and with the other arm made a lunge at Murphy "like that, and caught him." Appellant then pulled Barge back and Barge jerked loose, and Willis hit Barge. Appellant said he heard the gun fire. He further testified that Earl Murphy was in the car at that time, but came in presently with a shot gun in his hand. Appellant testified twice that he had no knowledge that any offense was going to be committed when they went to the Barge place. He said "I knew nothing about it. * * * I didn't have any knowledge at that time of any act that was going to be committed on Barge or any other person. * * * I had no knowledge that any offense was going to be committed when we went there."

The court submitted the case to the jury on the theory of principals. There are four bills of exception. Bill 1 sets out that while appellant was a witness and had testified that he and the Murphy brothers ate supper at a restaurant,—he was asked the following question: "After that what did you do?" Appellant started to tell what one of his companions said. Objection to this was sustained. Manifestly any narration of what Willis Murphy said would not be responsive to the question asked. The bill contains some things admissible and some not, which being true affords us no reason or excuse for holding the ruling herein complained of erroneous. Holt v. State, 98 Texas Crim. Rep., 248; Dixon v. State, 91 Texas Crim. Rep., 217; Sapp v. State, 87 Texas Crim. Rep., 606; Middleton v. State, 86 Texas Crim. Rep., 307.

Bill 2 presents the following: While a witness appellant was asked: "Was there ever at any time between you and Willis Murphy and Earl Murphy any statement made about going to do anybody harm or any person harm on that occasion?" The question was very general, and was open to the objection made and sustained, that the answer legitimately called for would have been self-serving, whether said statement had been made by appellant himself, or one of those alleged to have been acting with him as principals in the assault. The expected answer set out in the bill was, in part only, responsive. That part averring that witness would have answered that no acts or conduct of the Murphys indicated that they or either of them intended to assault Barge, was not only not responsive but also

expressed only the opinion of the witness as to the acts and conduct of said Murphys.

Bill 3 sets out that after answering in the negative as to whether various things said by Mr. Barge as having been done and said by appellant and his companions when they entered his place,—appellant was asked by State's counsel: "You would not tell this jury if you did?" to which objection was made because it was an indirect impeachment of appellant as a witness, and cast an aspersion upon him without legal sanction. The court overruled the objection, and the bill sets out that appellant was compelled to answer. The bill might be held defective for not setting out what answer was made by appellant, but we note from the statement of facts that he answered "I would, if there was anything to it." We do not think the objection sound.

If there was anything objectionable in the charge on principals, exceptions to which appear in bill of exception 4, it would be because same obviously placed upon the State a greater burden than the law imposed,—of which appellant can not be heard to complain.

Finding no reversible error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—We desire to supplement what was said in the opinion of affirmance regarding the facts with the following. In giving the substance of Barge's testimony we inadvertently made it appear that Barge claimed to have been hit with a shotgun by someone before Willis Murphy shot him with a pistol. Barge testified that Willis Murphy struck him on the head, causing blood to flow in his eyes which rendered him unable to see; that he tried to get away and about the time he got to the swinging door leading out of the office Willis Murphy shot him with a pistol; that he fell near the swinging door and someone struck him with the butt of a shotgun after he had been shot with the pistol.

It was appellant's contention that his presence at the place of the difficulty was an innocent presence; that he had no knowledge that Willis Murphy or his brother Earl intended to make an assault upon Barge; that he stopped near the door and Willis Murphy went on in the office to where Barge and Wyatt were standing talking; that appellant did not enter the office until after Barge made an attack on Willis Murphy, and that

seeing they were going to fight he pulled Barge back; that Willis Murphy then struck and shot Barge and that after the shot was fired by Willis Murphy Earl Murphy came into the office with a shotgun. No mention was made in our former opinion of the testimony of Mr. Wyatt who was an employe of the Barge Chevrolet Company. Mr. Barge testified that Willis Murphy, Earl Murphy and appellant entered his office at the same time, or "immediately followed each other in Indian file" at the time he, (Barge) and Wyatt were in the office. Wyatt was the first witness called by the State. He testified that he only saw one Murphy boy (evidently Willis Murphy) and that appellant was standing at the door just outside the office; that he saw what he took to be guns in the hands of Willis Murphy. If anybody else had any gun he did not know it. Wyatt said Willis Murphy asked Barge what "he was going to do, trying to take his car," and that Barge replied that "he thought he had a right to it," at which time Barge and Willis Murphy were close together. Witness left before Murphy and Barge got together. He never saw appellant except out near the door; did not hear him say anything and did not see him do anything; appellant made no attempt to come into the office while Wyatt was there. It will be observed that up to the time Wyatt left, his evidence is in accord with that given by appellant, and in conflict with that given by Barge. Appellant admitted that he had been with the Murphy boys all day and that they had been hunting, and that when they came to town that night they had two shotguns with them, one of which had been put in the car by appellant and the other by Earl Murphy. His whole defense was that his presence at the scene of the difficulty was entirely innocent, and that he was not acting with the Murphy boys in attacking Barge.

The court submitted the case on the theory of principals, charging the jury, among other things: "* * * that the true criterion for determining who are principals is, were the parties present at the time and place of the commission of the offense; did the parties act together in the commission of the offense; was the act committed in the pursuance of a common intent and in pursuance of previously formed design, in which the minds of all parties united and concurred. If so, then the law is that all are equally guilty, provided the offense was actually committed during the existence and in execution of the common design and intent of all."

It was the State's contention that appellant was present acting with the Murphy boys in pursuance of a conspiracy or

previously formed design to assault Barge. It is true the court told the jury that the mere presence of appellant would not make him guilty, but the complaint is that testimony was excluded which would have been explanatory of an innocent presence. All he was permitted to testify in regard to such matter was that he had no knowledge that any offense was going to be committed when he went to the Barge place.

Bill of exception number one reflects that after appellant had testified that he and the Murphy boys had eaten supper he was asked by his attorney: "After that, what did you do?" (meaning after the boys had eaten supper in the restaurant), to which appellant replied, "We got down and started to make the block and Willis Murphy said—," at which juncture the district attorney objected upon the ground that the *"testimony sought was self-serving,"* which objection was by the court sustained. In the opinion of affirmance this bill was disposed of upon the ground that the testimony was not responsive to the question. In this we believe we fell into error. A further examination of the bill shows that no such objection was interposed. If it had been the question could easily have been reformed to have met the objection. The district attorney urged that the purported testimony would be self-serving. That is the question the court ruled upon. We must take the bill as found, and as presented it shows that the court excluded the proposed testimony because it was thought to be self-serving. If permitted, appellant would have testified as follows: "* * * after they had gotten into the car and had proposed to make the block and after they had traveled a part of the way around the block Willis Murphy made the remark that he believed he would step in and see Barge to see if he could not get him to make some concession with reference to the car that Barge had had sequestered and got out of the car alone and that he got out without any knowledge of any purpose on the part of Willis Murphy to do Barge any harm or about any difficulty with him and walked along just behind him towards Partin's store which was on the same side of the street on the corner of said street with Columbia Street passing by the Barge Garage and by the front of the postoffice building which adjoined the Barge Garage on the North and finally Willis Murphy started back to the Barge Garage and he walked along with him and entered the front of the Barge Garage behind Willis Murphy unarmed and did not know of any purpose in the mind of the said Willis Murphy to inflict any injury on V. W. Barge or raise any diffi-

culty with him and did not enter the office with the said Willis Murphy. * * *"

We are of opinion all of the proposed testimony should have been received. There are many precedents in our court which appear pertinent to the question, and which sustain the view just expressed. Upon the general subject of self-serving declarations, the rule is stated by Mr. Branch in section 90, p. 58, of his Ann. Tex. P. C., as follows: "Proof of declarations made by defendant in his own favor after the alleged offense was committed is not admissible for him, unless part of the res gestae, *or unless admissible to explain an act, confession, or conversation offered by the State, or unless it is a part of a conversation or statement introduced by the State on the same subject.*" (Italics ours).

Many cases are cited by Mr. Branch in support of the text. In Jackson v. State, 55 Texas Crim. Rep., 79, 115 S. W., 262, accused was being prosecuted for abortion. The State introduced evidence showing that on the day of the alleged offense appellant went from his home in Alvarado to Cleburne and that while there he visited the home of deceased. His visit to Cleburne, and other incidents and circumstances connected with it were relied on by the State as criminative. It was the theory of the State that Jackson's trip to Cleburne was made in connection with deceased and bore upon the purpose of seeing her and producing an abortion. Appellant sought to avoid the effect of his presence in Cleburne by showing that his visit there was for an entirely different and innocent purpose. He was permitted to testify that he went to Cleburne on that day for the purpose of selling a horse, but the court would not permit him to go further than that. He offered to prove by himself, his wife and one Foster that a week or more prior to the occasion in question he had made an engagement with Foster to meet him in Cleburne and sell the horse for accused. All of the testimony offered through himself, his wife and Foster was excluded. In writing for the court Judge Davidson said: "* * * We are of opinion that under the authorities these rulings of the court constituted error. There is some testimony in regard to statements of appellant en route to Cleburne, excluded by the court, in which, perhaps, there was no error. Under the terms of Article 791 of the Code of Criminal Procedure (now art. 728), and the authorities in this State construing that statute, we think the testimony of appellant, his wife, and Foster should have been admitted. By the terms of the statute cited, wherever the acts, declarations, conversations, writings,

etc., are put in evidence by one side, acts, declarations, writings, etc. which explains the testimony already introduced may be met by the other side, and any harmful or hurtful tendency may be thus met. Davis v. State, 3 Texas App., 91; Epson v. State, 29 Texas Crim. App., 607; Everett v. State, 30 Texas Crim. App., 682; Schauer v. State, 60 S. W. Rep., 249; Nelson v. State, 58 S. W., 107; Poole v. State, 45 Texas Crim. Rep., 348; Pratt v. State, 53 Texas Crim. Rep., 281; Dallas Term, 1908. Upon another trial the testimony of the above named parties should be admitted."

In Carter v. State, 73 Texas Crim. Rep., 334, 165 S. W., 200, accused (Charley Carter) was convicted for assault with intent to murder John Lantron. The State's case showed that prior to the assault out of which the prosecution grew one of accused's brothers had had a fight with one of Lantron's brothers. The assault out of which the prosecution grew occurred about midnight. The State's evidence was to the effect that Charley Carter went and got his brother Dave Carter, and that they waylaid the Lantron boys and without any provocation assaulted them. Charley Carter claimed that the meeting of him and his brother Dave with the Lantron boys was by mere accident. To support his theory Charley Carter offered to prove by two witnesses that Dave Carter, when he left the place where he had previously been, stated that he was going to his father's to stay the remainder of the night. On objection by the State this testimony was excluded on the ground that Dave Carter's declarations were self-serving and inadmissible under the circumstances. This court said: "The great preponderance of the evidence shown by this record was against appellant on this issue, yet, as we understand the law, he was entitled to introduce this evidence, for it was for the jury to pass upon the issue, and not the court, however improbable or untrue the court may have thought his declarations were at the time."

In Irby v. State, 25 Texas App., 203, accused was prosecuted for the murder of one Needham. His explanation of his presence at the time of the killing and of the fact that he had a pistol at such time would have been that a short time before the killing Needham was seeking to trade for a pistol, and that was the reason accused had the pistol with him, and why he had invited deceased to go with him to the place where the shooting occurred. In holding the exclusion of such testimony erroneous Judge Willson for the court said: "It tended to throw light upon the transaction, upon the conduct of both deceased

and defendant, and, in view of the facts as proved on the trial, was material evidence for the defendant."

In Simmons v. State, 31 Texas Crim. Rep., 227, 20 S. W., 573, which was a prosecution for murder, the evidence showed that Williamson (deceased) had gone to Simmons' gin twice on the day of the homicide, inquiring for Simmons and threatening to kill him on sight, charging him with having insulted the step-daughter of deceased. Simmons offered to prove in explanation of his presence at the place of the killing that he had gone to deceased after having a conference with his (Simmons') friends, who advised him to see deceased and explain to him that he was not guilty of such alleged insult; that he had gone to see deceased upon such advice and had taken the gun with him for protection, also upon the advice of his friends. The court excluded evidence of what had taken place at the conference between Simmons and his friends, and qualified the bill of exception complaining of such action with the statement that he permitted all the witnesses to testify that Simmons and others went to see Williamson for the purpose of reconciling him and explaining the matter to him, and that he only excluded the particular details of the conference held by the accused and his friends. This court said:

"We are of opinion that the proposed facts were admissible. That appellant was advised by others to go to the deceased, and explain the matter, was calculated strongly to corroborate the other witnesses as to the purpose of defendant in going to the deceased. As a criminative fact, the State found that appellant went to where deceased was, being armed with a gun. What was the state of his mind? For what purpose did he go? Was it a friendly mission, or was it for the purpose of killing deceased? The State's theory was that defendant went with malice in his heart; went to kill. Appellant contends that his mission was for a settlement, to prevent trouble with the deceased. At his house, about seventy-five yards from the gin, there was a consultation of his friends. They advised him to go and try to convince deceased that he (appellant) had not made an assault upon the young lady. Was this advice, under the circumstances, admissible evidence? 'Upon an inquiry as to the state of mind, sentiment, or disposition of a person at a particular period, his declarations and conversations are admissible. They are parts of the res gestae.' "

To review other cases would unduly lengthen this opinion, but upon the same point see Johnson v. State, 29 Texas Crim. Rep., 150, 15 S. W., 647; Farrar v. State, 29 Texas Crim. Rep.,

250, 15 S. W., 719; Williams v. State, 112 Texas Crim. Rep., 482, 17 S. W. (2d) 1057; English v. State, 124 Texas Crim. Rep., 459, 63 S. W. (2d) 547; McPherson v. State, 79 Texas Crim. Rep., 93, 182 S. W., 1114. All of them are thought to support the conclusion here announced.

In the present case, as heretofore stated, appellant was restricted in his testimony to a bare statement that at the time he went to the office of Mr. Barge he had no knowledge that an offense was going to be committed by Willis Murphy or the Murphy boys. His act in going with the Murphy boys to Barge's place of business, and the conduct attributed to him by Barge were regarded by the State as highly criminative, and the testimony excluded, if believed by the jury, was explanatory of his presence in a way favorable to him. Under the authorities cited it seems clear that the excluded testimony should have been admitted.

Bill of exception number two reflects that while appellant was testifying in his own behalf he was asked by his counsel: "Was there ever at any time between you and Willis Murphy and Earl Murphy any statement made about going to do anybody harm; any person harm on that occasion?" Again the attorney for the State objected upon the ground that the testimony proposed to be elicited by such question was self-serving, which objection was sustained. If permitted appellant would have answered that there was never any word mentioned at any time between himself, Willis Murphy and Earl Murphy before going into the Barge Chevrolet Co. in regard to doing anybody any harm, and that no acts or misconduct on the part of Willis Murphy and Earl Murphy indicated that Willis Murphy and Earl Murphy, or either of them, intended to assault Barge, or to raise any difficulty with him.

Under the authorities heretofore cited surely the witness ought to have been permitted to testify that nothing was said between him and the Murphy boys while going to the place of the difficulty in regard to doing anybody any harm. Such testimony would tend to support appellant's contention that his presence there was an innocent one and not the result of a previous conspiracy or design between him and the Murphy boys to do Barge harm. Upon another trial appellant should be permitted to give this testimony, if it is sought to be elicited.

That part of the proposed testimony to the effect that no acts or conduct on the part of the Murphy boys indicated that either of them intended to assault Barge appears objectionable as an opinion of the witness.

It may be that if appellant had been permitted to give the testimony which was excluded the jury might have disregarded the same, yet the circumstances incident to his presence at the place of the difficulty and his purpose in going there were matters which the jury should pass upon, and we are firmly persuaded that the excluded testimony bore upon that issue.

For the reasons stated appellant's motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*