## JOHN BARR v. THE STATE.

No. 18601.   Delivered November 4, 1936.
Rehearing Denied December 2, 1936.
Application for Leave to File Second Motion for Rehearing Denied
(Without Written Opinion) December 9, 1936.

370

The opinion states the case.

*Tom Mears,* of Gatesville, and *Holvey Williams,* of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of murder with malice, and his punishment was assessed at

confinement in the state penitentiary for a term of ninety-nine years.

This is the third appeal in this case. The two former appeals are reported in the 72 S. W. (2d) 905 and 83 S. W. (2d) 998, respectively, where the facts are stated in the opinions of the court. Therefore, we do not deem it necessary to restate them further than to say that the State relied upon the testimony of M. T. Taylor, a young man who was with the deceased on the wagon at the time of the commission of the alleged offense. He testified that the appellant struck the deceased with a wagon standard which he, appellant, took from the wagon upon which the deceased and witness were riding. The appellant and his witnesses testified that deceased slipped and fell from the wagon upon some rocks, which caused the fracture of his skull and resulted in his death. After appellant was convicted on his first trial, the witness Taylor appeared before a notary public in the town of McGregor and made an affidavit, in which he stated facts of the occurrence which coincided with the testimony of appellant and his witnesses; and which, if true, completely exonerated appellant from any and all liability. The witness Taylor on this last trial again testified, as he had theretofore testified, that appellant struck the deceased with a wagon standard which produced death; that the affidavit which he had made was made under duress in this, that appellant had threatened to kill him. By the affidavit and by the notary public appellant not only sought to contradict the testimony of Taylor as to how the injury was inflicted upon the deceased, but also that the affidavit was made voluntarily and not as the result of threats.

By bill of exception number three appellant complains because the court permitted the State to prove by the witness Taylor that he made the affidavit after having been threatened by the appellant. The objection to said testimony was that it was an attempt to vary the terms of a written instrument. We cannot agree with him that it was an attempt to vary the terms of the affidavit. It was merely an attempt to show the cause for and condition under which it was made. It is a well settled rule in this State and universally recognized that it is always permissible to show that a note or deed was executed without any consideration or while the person executing the same was under duress in order to avoid its binding force and effect and not to vary the terms thereof.

Bills of exception numbers four and five fail to show any reversible error.

Appellant objected to the court's charge in which he limited the testimony relating to the introduction of the affidavit as evidence by instructing the jury that the affidavit made by the witness M. T. Taylor and the testimony of other witnesses in reference to the making of the affidavit was admitted in evidence for the purpose of aiding them, if it does do so, in passing upon the credibility of the witness and the weight to be given to his testimony, etc. We think that this was a correct pronouncement of the law inasmuch as the appellant sought to contradict and impeach the witness Taylor by the affidavit as well as by the testimony of the notary public before whom it was made.

Appellant also objected to the court's charge on the ground that he did not submit to them the issue as to whether the witness Taylor was an accomplice, and that if they found that Taylor was an accomplice, they could not convict him on Taylor's testimony alone unless he was corroborated by other facts and circumstances. Appellant insists that the witness Taylor became an accomplice to the crime not by reason of the fact that he had any direct participation therein, but because he made the affidavit, hereinabove referred to; and second, that between the time of the first and second trial he absented himself from the county, and further because he did not make any effort to prevent the appellant from striking the deceased. We do not believe that this would bring the witness within the category of an accomplice. The mere presence of one at the commission of an offense by another is not sufficient to connect him with it, and, therefore, the mere fact that the witness Taylor did not do anything to prevent the assault certainly did not make him an accomplice or connect him with the crime. Neither could the witness be an accessory to the crime by reason of having made the affidavit referred to, because at the time it was made he had already testified in the case implicating the appellant, and appellant had already been convicted. Consequently it cannot be said that by making the affidavit he was giving him or sought to give him any assistance to escape arrest or trial, to say nothing of the fact, that the witness Taylor denied that the affidavit was freely and voluntarily made. Under the facts and circumstances proven on the trial of this case it cannot be said that Taylor was an accessory under the provisions of art. 77, Penal Code, 1925.

Appellant objected to the court's charge because the court defined a deadly weapon as being one which, according to the mode and manner in which it is used is reasonably calculated

and likely to produce death or serious bodily injury, and because the court did not go further and instruct them that although death resulted from the use of the stick, if it did so, it would not constitute a deadly weapon. Appellant no doubt at the time he made the objection had in mind art. 1261, Penal Code. Said article has been repealed. However, we think that if the court had reformed his charge to meet the objection, it would have been an instruction on the weight of the testimony.

Appellant urged a number of other exceptions to the court's charge which we have considered in connection with the same, but do not believe that it is subject to the objections addressed thereto.

Appellant has a number of exceptions to the argument of the district attorney. The one upon which he relies most strongly for reversal of this case is as follows: "Now they say you shouldn't require him to pay the penalty he required of his victim. They say because he walked up and shook hands— you know some of the coldest blooded people in the world are those kind that will smile all the time and shake hands with you with one hand and let you have it with the other." Appellant objected on the ground that there was no evidence in the record showing that some of the coldest blooded people in the world are those kind that will smile all the time and shake hands with you with one hand and let you have it with the other. The court qualified said bill of exception and in his qualification states that prior to the argument of the district attorney, of which the appellant complains, counsel for the defendant had argued to the jury that the jury should not find defendant guilty of murder with malice and assess a heavy penalty for the reason that the testimony showed that defendant walked over and was in good humor, and shook hands with the deceased prior to his injury and defendant was smiling at the time he shook hands. We do not think that this bill shows such vicious argument as would require a reversal of this case. The district attorney did not say that he knew some people who were so cold blooded that they could shake hands with you with one hand, smile and let you have it with the other. It was merely the expression of an opinion as to what was within the knowledge of the jury. However, in view of the testimony and the argument of counsel for the defendant, we do not think that the argument complained of was wholly unjustified. See Borrer v. State, 83 Texas Crim. Rep., 198 (202); House v. State, 19 Texas Cr. R., 227.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have given our most careful consideration to the matters urged in appellant's motion for rehearing. To make ourselves clear may require seeming repetition.

The State's case rested on the testimony of witness Taylor, who was an eye-witness to the homicide. He fully testified to facts showing appellant's guilt, and further said that after the occurrence he met appellant who told him if he did not go up there and sign, that deceased fell out of his wagon and was thus killed, he, appellant, would kill him, witness. Also witness said that appellant's son told him if he appeared against appellant he would kill him, and further witness said that, having seen appellant kill one man, he was afraid appellant would kill him, so he went to a notary's office and signed an affidavit to the effect that deceased was killed by falling from his wagon. The record shows that said affidavit was shown witness during his cross-examination, and was by him identified, and same was later introduced in evidence by appellant. The notary who took said affidavit, a witness named Ash, and appellant gave testimony contradictory to that of Taylor when he said he made the affidavit in question because he was threatened by appellant and was afraid of him.

Appellant strenuously objects to that part of our opinion in which we upheld the action of the lower court in limiting in his charge the effect to be given to the testimony pro and con as to said affidavit,—to the question of the credibility of Taylor. Appellant calls attention to Art. 728, C. C. P., and to the cases of Gomez v. State, 94 S. W. (2d) 1157; Bennett v. State, 81 S. W. Rep., 30; Brown v. State, 77 S. W. (2d) 694; Hamilton v. State, 96 S. W. (2d) 983; Knight v. State, 183 S. W., 1158, and other authorities.

Art. 728, C. C. P., referred to merely sets out as the law that when part of an act, declaration, etc., is put in evidence by one party, the whole on the same subject may be introduced by the opposite party; and that when a detailed act, declaration,

etc., is put in evidence by one party, any other act, declaration, etc., necessary to make that part introduced fully understood, may be introduced by the other party. Just how this supports appellant's proposition is not clear to us. Taylor testified as a witness that he saw appellant kill deceased by striking him with a wagon standard. He further testified that later he made an affidavit, in effect, that his former testimony was false, and that in fact deceased was killed by a fall from his wagon, but he averred that this affidavit was untrue, and that it was made by him through fear of appellant, and because appellant and his son had threatened him, and that in fact appellant had killed deceased by striking him with a wagon standard.

The question for the jury was whether Taylor told the truth in his testimony that appellant killed deceased, or in his affidavit that deceased was killed by his fall from the wagon.

Looking to the authorities, cited by appellant, we note that in the Hamilton case, supra, Judge Hawkins quoted as follows: "It is elementary that efforts to manufacture evdence, or procure false testimony, may be shown as indicating a consciousness of guilt," and many cases are cited supporting the proposition. We do not see how this helps appellant. In the Gomez case, supra, the legal effect of Art. 728, supra, is merely announced, and as far as we can see it affords appellant no assistance. We think appellant mistaken in his attempted application of the holding in Bennett v. State, 81 S. W. Rep., 30, to the case before us. If we understand that case, it sets out that after introducing a written dying declaration of one who was killed, the State also proved an oral dying declaration of the same party. The accused then put on two witnesses who swore that they were with deceased after she was shot and before she died, and heard her say that appellant and one Evans were shooting at each other when she, deceased, was shot, but she did not know who shot her. It further appears that the State then introduced four witnesses, F. D. M. and H., who testified that they were with deceased part of the time after she was shot and before she died, and they did not hear her say that appellant and Evans were shooting at each other, and she got shot and did not know who shot her. In his charge the court told the jury:

"The evidence of the witnesses F, D, M and H to the effect and in substance that the deceased did not say at any time in their presence that she was shot while the defendant and Joe Evans were shooting at each other, and she didn't know who

shot her, was admitted for the sole purpose to be considered by you for what you may deem the same worth, if anything, as affecting the credibility of the witness Henrietta Edwards, and you can consider the same for no other purpose."

This charge was held error, and we think correctly so. The difference in the principle involved in the instant case and the Bennett case seems apparent. The testimony of the four witnesses introduced by the State in the Bennett case was not a direct statement that the two defense witnesses had made false statements to them, but was in substance and in effect for the consideration of the jury as showing that said defense witnesses might have been mistaken in their testimony. We illustrate in an effort to make clear the distinction: Two men may be present at a homicide, and one testify that he heard the accused call the deceased an approbrious epithet, and then saw him shoot deceased. The other witness may testify that he saw the accused shoot deceased, but did not hear him call the deceased the epithet. It would be clearly wrong for the court to tell the jury they could only consider the testimony of witness No. 2 to the effect that he did not hear the accused use the epithet, as impeaching witness No. 1,—for such testimony might be used by the jury as showing that no epithet was in fact used by the accused. Suppose, however, witness No. 1, after swearing to the fact that the accused used the epithet mentioned, be asked if he had not met witness No. 2 as he went home from the scene of the homicide, and if he had not told witness No. 2 that the accused did not use any epithet before shooting deceased. Manifestly if in such case witness No. 2 be introduced to testify that he saw witness No. 1 on his way home on the occasion mentioned, and the witness told him that the accused did not use any epithet, this could only be used for the purpose of impeaching witness No. 1, and the court, at least upon request, should so instruct the jury. Nor do any of the authorities cited by appellant seem to hold contrary to what we said in our former opinion.

Believing the case properly decided, the motion for rehearing is overruled.

*Overruled.*