Ex parte Mark Edward SHORTHOUSE.

Ex parte Anna Marie SHORTHOUSE.

Ex parte Lewis CROWELL.

Ex parte Helen CROWELL.

Nos. 68943, 68944, 68946 and 68947.

Court of Criminal Appeals of Texas, En Banc.

Nov. 3, 1982.

date would seem to be similar.

Ian Inglis, Gary J. Cohen, Austin, for appellants.

Neal Pfeiffer, Dist. Atty., Bastrop, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

These proceedings are before this court on applicants' original applications for writs of habeas corpus pursuant to Article V, § 5 of the Texas Constitution.

The limited record before this court reveals that on February 8, 1982, a judgment of contempt was entered against each applicant, ordering each applicant to be confined in the Bastop County jail until each purged himself or herself of contempt by testifying before the grand jury, and further imposing upon each a $500.00 fine.

These judgments were entered by the judge of the 21st Judicial District Court of Bastrop County pursuant to Article 20.15, V.A.C.C.P., which provides:

"When a witness, brought in any manner before a grand jury, refused to testify, such fact shall be made known to the attorney representing the State or to the court; and the court may compel the witness to answer the question, if it appear to be a proper one, by imposing a fine not exceeding five hundred dollars, and by committing the party to jail until he is willing to testify."

On January 14, 1982, all the applicants were called to testify before the grand jury. They did not appear or testify. On the same date the grand jury indicted applicant Mark Edward Shorthouse for possession of marihuana alleged to have occurred on or about November 11, 1981.

On January 15, 1982, the district attorney applied for and obtained immunity for each of the applicants from the district judge. The immunity applications stated the grand jury was presently considering indictments under V.T.C.A., Penal Code, § 71.02, against each named individual and other parties and the individual named in each of the immunity applications was a party to an offense under Chapter 71 of the Penal Code and was a material witness against other individuals to an offense under § 71.02, and should be granted testimonial immunity.

V.T.C.A., Penal Code, § 71.04, provides:

"(a) *A party to an offense* under this Chapter may be required to furnish evidence or testify about the offense.

"(b) No evidence or testimony required to be furnished under the provisions of this section nor any information directly or indirectly derived from such evidence or testimony *may be used* against the witness in any criminal case, except a prosecution for aggravated perjury or contempt." (Emphasis supplied.)

The orders granting immunity read in pertinent part:

"It is therefore Ordered that (applicant) pursuant to Section 71.04, Texas Penal Code appear before the Bastrop County Grand Jury at Bastrop, Texas on January 20, 1982, at 9:00 o'clock a.m., where he is ordered to furnish evidence and testify about such offense. It is further Ordered that no evidence or testimony furnished by (applicant), nor any information directly or indirectly derived from such evidence or testimony may be used against (applicant) in any criminal case, except in a prosecution for aggravated Perjury or Contempt."

On January 18, 1982, the district court refused to quash the grand jury subpoenas and ordered the applicants to testify before the grand jury.

On January 20, 1982, each of the applicants was called to testify before the grand jury, and each refused to testify and invoked their privilege against self-incrimination. On January 22, 1982, motions for contempt were filed by the district attorney and on January 25, 1982, the district court ordered each of the applicants to appear before the grand jury on February 8, 1982 and testify pursuant to the immunity granted.

Thereafter on February 8, 1982, the court conducted a hearing, determined that the applicants had refused to testify before the grand jury on February 8th despite the grants of immunity, that the questions propounded were proper questions, etc., and held the applicants in contempt of court for their refusal to testify. See Article 20.15, V.A.C.C.P.

On February 9, 1982, applicants filed motions for leave to file original applications

for writs of habeas corpus in this court. The applicants were freed on $1,000.00 personal bonds and the court gave the respondent until February 16, 1982 to file a response to said motions for leave. The response was filed on February 15, 1982, and the motions for leave to file were granted and the causes were set for submission and the parties given until March 31, 1982, to file briefs.

■ Applicants attack the contempt orders on a number of grounds. We observe, however, at the outset that it has been made to appear that the term of the grand jury before they were ordered to testify has expired and the jurors discharged. Thus, that part of the orders requiring testimony before said body is now moot. *Ex parte Jackson,* 95 Tex.Cr.R. 200, 253 S.W. 287 (1923), held that a witness cited for contempt for refusal to answer questions before a grand jury and confined to jail until he so testified was purged of contempt when the discharge of the particular grand jury was observed. "It would seem that when the end is no longer possible of accomplishment further resort to the means would be held futile." *Jackson* at pp. 288–289. See also *Ex parte Moorehouse,* 614 S.W.2d 450 (Tex.Cr.App.1981); *Ex parte Rodriquez,* 629 S.W.2d 757 (Tex.Cr.App. 1982). *Ex parte Richardson,* 640 S.W.2d 294 (Tex.Cr.App.1982). Although that part of the contempt orders requiring the applicants to appear and testify before the grand jury in order to purge themselves of contempt is now moot, the portion of the orders imposing the fine of $500.00 on each applicant is not moot. See and cf. *Ex parte Richardson,* supra.

We turn first then to applicants' contention that V.T.C.A., Penal Code, § 71.04, fails to provide sufficient protection of the privilege against self-incrimination as established by Article I, § 10 of the Texas Constitution and the decisional law of this state. Applicants argue that it is well established state case law, based in whole or in part upon Article I, § 10 of the State Constitution, that any grant of immunity must serve to absolutely prohibit prosecution for the offense about which the required testimony relates. Applicants thus contend that only absolute, complete, full or transactional immunity is permissible under Texas law and that the testimonial or use and derivative use immunity authorized by V.T.C.A., Penal Code, § 71.04, is unauthorized and unconstitutional. We do not agree.

In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court of the United States upheld the federal constitutionality of a statute, 18 U.S.C. § 6002, that provides for derivative use or testimonial immunity. The Court held:

"The statute's explicit proscription for the use of any criminal case of 'testimony (or other information directly or indirectly derived from such testimony or other information)' is consonant with 5th Amendment standards. We hold that such immunity from use and derivative use is co-extensive with the scope of the privilege of self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded with the privilege, it need not be broader. Transactional Immunity, which accords full immunity from prosecution for the offense for which the compelled testimony relates, affords the witness considerably broader protection than does the 5th Amendment privilege."

It is clear why the applicants do not rely upon the Fifth Amendment and its interpretation by the United States Supreme Court. It is the applicants' contention that the self-incrimination privilege of Article I, § 10 of our State Constitution is broader than that of the Fifth Amendment and has so been interpreted by Texas courts.

In reading the limited cases concerning immunity conferred by statute indicates an alignment by Texas courts on the side of

transactional immunity. See, e.g., *Ferrantello v. State,* 158 Tex.Cr.R. 471, 256 S.W.2d 587, 595 (1953); *Dendy v. Wilson,* 142 Tex. 460, 179 S.W.2d 269, 275 (1944); *Ex parte Muncy,* 72 Tex.Cr.R. 541, 163 S.W. 29, 38, 44 (1913). See also *Ex parte Joseph,* 172 Tex. Cr.R. 355, 356 S.W.2d 789, 790–91 (1962).[1] In cases concerning the power of a prosecutor to grant immunity with the approval of the court, it would appear that this court has consistently held that a witness must be granted transactional immunity by the prosecutor before he can be compelled to testify. See *Ex parte Copeland,* 91 Tex. Cr.R. 549, 240 S.W. 314, 317 (1922); *Ex parte Barnes,* 73 Tex.Cr.R. 583, 166 S.W. 728, 729 (1914); *Ex parte Muncy,* 72 Tex. Cr.R. 541, 163 S.W. 29, 41 (1913); *Ex parte Napoleon,* 65 Tex.Cr.R. 307, 144 S.W. 269, 270 (1912).

None of the immunity cases have, however, discussed the precise question of whether the self-incrimination provision of Article I, § 10 of our State Constitution is broader than the Fifth Amendment. In this regard it must be remembered that the Fifth Amendment was not made applicable to the states until the decision in *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), although the Supreme Court of Texas relied in part upon *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), in its decision in *Dendy v. Wilson,* supra.

In *Olson v. State,* 484 S.W.2d 756 (Tex.Cr. App.1972) (Opinion on Motion for Rehearing), the Court of Criminal Appeals, overruling several cases, held that compelling a handwriting exemplar does not constitute compelling an accused to "give evidence against himself" in violation of Article I, § 10 of the Texas Constitution. In so holding, the court observed that the self-incrimination provision of the Texas Constitution is comparable in scope to the Fifth Amendment of the United States Constitution that no person shall be compelled in a criminal case to be a witness against himself, both provisions having a common ancestry. The court wrote:

"After much study and research, we conclude that Article I, Section 10, is declaratory of the common law, and that it was the intent of the framers of our constitutional privilege to provide the citizens of this state with a safeguard similar to that contained in the Fifth Amendment."

■ It is thus clear from *Olson* that the privilege against self-incrimination embodied in Article I, § 10 of our State Constitution is not to be given a broader construction than that of the Fifth Amendment, United States Constitution.

■ We therefore hold that immunity from use and derivative use of testimony compelled as set forth in V.T.C.A., Penal Code, § 71.04, is co-extensive with the scope of self-incrimination as provided in Article I, § 10 of the State Constitution and is sufficient to compel testimony over a claim of the privilege. Absolute, complete or transactional immunity which accords full immunity from prosecution for the offense for which the compelled testimony relates affords the witness broader protection than does the self-incrimination privilege embodied in Article I, § 10 of the State Constitution. See and cf. *Kastigar v. United States,* supra.

All earlier decisions of this court which are in conflict with today's holding, and which may be interpreted as holding that Article I, § 10 of the State Constitution requires transactional immunity to compel testimony over a claim of the privilege against self-incrimination are hereby overruled.

■ Despite our holding that the legislative enacted portions of V.T.C.A., Penal

---

1. Many of the state statutes authorizing immunity have not been interpreted by the courts, and some of the statutes provide only for "use" immunity for compelled testimony. See "Tex-

as Immunity Law: A Survey and a Proposal," Houston Law Review, Vol. 10, No. 5, pp. 1120, 1124.

Code, § 71.04, are consonant with Article I, § 10, standards, it does not mean that absolute, complete or transactional immunity can never be required. Basically, of course, the State Constitution may be amended to so provide. While federal constitutional safeguards applicable to the states do establish a minimum standard for state courts, states have plenary power to enlarge constitutional guarantees. They may go further and provide greater safeguards than guaranteed by the federal Constitution. *Olson v. State,* supra, at p. 762.

Even in absence of a state constitutional amendment, and despite today's holding, the Legislature is free in its wisdom to enact immunity statutes requiring transactional immunity out of deference to greater individual protection. Further, today's holding does not affect the present specific state immunity statutes requiring transactional immunity.

■ Applicants also contend that they are not parties to an offense under Chapter 71 of the Penal Code and therefore V.T. C.A., Penal Code, § 71.04, is not applicable to them. Their precise argument is that there is no complaint or indictment charging them with an offense under said Chapter 71. Without deciding whether formal charges are essential to constitute one "a party to an offense under this chapter...." [See § 71.04(a)], we observe that the record contains a complaint charging the applicants with an offense under Chapter 71 executed and filed prior to the judgments of contempt.

The other contentions advanced by the applicants have been decided adversely to applicants in *Ex parte Rogers,* 640 S.W.2d 921 (Tex.Cr.App., this day decided), or under the circumstances presented would not be the proper basis for habeas corpus relief.

The applicants are entitled to relief from that portion of the contempt judgments requiring them to appear before the grand jury and testify in order to purge themselves of contempt. The applicants each are still liable for the $500.00 imposed by the contempt judgment. Relief in this regard is denied.

It is so ordered.