**Ex parte Ronald Edwin WILKINSON.**

**Ex parte Grady Stewart WILLIAMS.**

**No. 68961.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 24, 1982.

---

Carolyn Clause Garcia and Michael Angus McDougal, Houston, for Wilkinson.

Stanley G. Schneider, Houston, for Williams.

John B. Holmes, Jr., Dist. Atty., and Ray Elvin Speece, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an original application for writ of habeas corpus. Applicants seek relief from

orders of the 179th Judicial District Court holding them in contempt for refusing to answer questions before the grand jury empaneled by said court.

The applicants appeared before the grand jury in response to subpoenas on March 11, 1982. The grand jury was engaged in an investigation of the shooting death of William Scott Greene. The applicants refused to answer questions on the basis of their privilege against self-incrimination. The State filed written motions to grant "use" immunity to each applicant with regard to any grand jury testimony given by him, and requesting that the immunity be approved by the court and that each applicant be compelled to testify. The motions were granted. Thereafter, before the grand jury, the applicants still refused to answer questions propounded by the assistant district attorney on the basis of the privilege against self-incrimination. The applicants were then returned to court where the judge was informed of the refusals, the nature of the questions, etc. Upon the continued refusal of the applicants to testify before the grand jury, each was held in contempt of court and ordered imprisoned for six months and assessed a fine in the amount of $500.00.[1]

The applicants initially contend that the State's offer of "use" immunity was insufficient to protect them from answering questions which might tend to incriminate them, and that they cannot be properly incarcerated for contempt for refusal to answer questions on the basis of their privilege against self-incrimination. They argue that only transactional immunity can compel their testimony over a claim of a privilege against self-incrimination.

The Fifth Amendment, United States Constitution, by virtue of the Fourteenth Amendment, was made applicable to the states in 1964 by *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Applicants can find little comfort in the privilege against self-incrimination provision of the Fifth Amendment, however, in view of the grant of "use" immunity.

In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the United States Supreme Court upheld the federal constitutionality of a statute, 18 U.S.C., § 6002, that provides for derivative use or testimonial immunity. The court held:

"The statute's explicit proscription of the use in any criminal case of 'testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information)' is consonant with Fifth Amendment standards. We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. *Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege.*" (Emphasis supplied.)

Applicants can find little comfort in Article I, § 10 of the Texas Constitution either. Only recently in *Ex parte Shorthouse,* et al., 640 S.W.2d 924 (Tex.Cr.App.1982), this court held that the privilege against self-incrimination embodied in Article I, § 10 of our State Constitution is not to be given a broader construction than that of the Fifth Amendment, and further held that the immunity from use and derivative

---

1. The contempt orders did not contain a proviso that the applicants could purge themselves of contempt by testifying as ordered. They were told, however, at the time the contempt orders were entered the grand jury was still in session and would hear the testimony. The record now reflects that the term of the grand jury has now expired and said jury has been discharged.

use is co-extensive with the scope of self-incrimination as provided in said Article I, § 10, and is sufficient to compel testimony over a claim of the privilege.[2] The court relied in large part upon *Olson v. State,* 484 S.W.2d 756 (Tex.Cr.App.1969).

There would seem therefore to be no merit to applicants' contention the State's grant of "use" immunity was insufficient from a constitutional standpoint.

Applicants further assert, however, that when a witness refuses to testify before a grand jury the court does not have the authority to punish under Article 1911a, V.A.C.S., but only under Article 20.15, V.A. C.C.P. Applicants argue the penalties assessed were consonant with Article 1911a, supra, but not Article 20.15, supra.

Article 20.15, supra (when witness refuses to testify), provides:

"When a witness, brought in any manner before a grand jury, refuses to testify, such fact shall be made known to the attorney representing the State or to the court; and the court may compel the witness to answer the question, if it appears to be a proper one, by imposing a fine not exceeding five hundred dollars, and by committing the party to jail until he is willing to testify."

This statute is found in the 1965 Code of Criminal Procedure in Chapter 20 entitled "Grand Jury—Duties and Powers." The 1965 revision increased the fine possible from one hundred dollars to five hundred dollars as had been provided in Article 387, V.A.C.C.P., 1925, whose forerunners were Articles 438 and 426 in earlier codes. It is clear that the statute had been a part of our criminal procedural laws for many years.

Article 1911a, V.A.C.S. (Contempt; power of courts; penalties), provides:

"Inherent power and authority of courts

"Section 1. A court possesses inherently all powers necessary for the exer-

cise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt.

"Penalties for contempt

"Sec. 2. (a) Every court other than a justice court or municipal court may punish by a fine of not more than $500, or by confinement in the county jail for not more than six months, or both, any person guilty of contempt of the court.

"(b) A justice court or municipal court may punish by a fine of not more than $100, or by confinement in the county or city jail for not more than three days, or both, any person guilty of contempt of the court.

"(c) Provided, however, an officer of a court held in contempt by a trial court, shall, upon proper motion filed in the offended court, be released upon his own personal recognizance pending a determination of his guilt or innocence by a judge or a district court, other than the offended court. Said judge to be appointed for that purpose by the presiding judge of the Administrative Judicial District wherein the alleged contempt occurred.

"Confinement to enforce order

"Sec. 3. Nothing in this Act affects a court's power to confine a contemner in order to compel him to obey a court order.

"Work-release sentence or probation

"Sec. 4. Section 5, Article 42.03, Code of Criminal Procedure, 1965, as amended,

---

**2.** The statute involved (V.T.C.A., Penal Code,   § 71.04), sanctioned "use" immunity.

and Section 14.12, Family Code, as amended, apply when a person is punished by confinement for contempt of court for disobedience of court order to make periodic payments for the support of a child."

This statute was first enacted in 1971 (Acts 1971, 62nd Leg., p. 2535, ch. 831, §§ 1 to 3, eff. Aug. 30, 1971). Section 2 was amended in 1973 (Acts 1973, 63rd Leg., p. 1784, ch. 657, § 1, eff. Aug. 27, 1973). Section 4 was added in 1977 (Acts 1977, 65th Leg., p. 2076, ch. 827, § 2, eff. Aug. 29, 1977). Said § 4 was amended in 1981 (Acts 1981, 67th Leg., p. 2537, ch. 674, § 4, eff. Sept. 1, 1981).

It is applicants' argument that Articles 1911a and 20.15 are irreconcilable and that the principles of statutory construction require that the more specific statute, Article 20.15, supra, be applied in the instant case.

Article 5429b-2, § 3.06, V.A.C.S. (Code Construction Act), provides that:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail."

In *Alejos v. State,* 555 S.W.2d 444, 449–450 (Tex.Cr.App.1977), it was stated:

"Normally when statutes are in pari materia effort is made to harmonize and give effect with the special governing the general in the event of any conflict. *Hines v. State,* 515 S.W.2d 670 (Tex.Cr. App.1974); *Cuellar v. State,* 521 S.W.2d 277 (Tex.Cr.App.1975); *Ex parte Harrell* [542 S.W.2d 169 (Tex.Cr.App.1976)], supra; *Jones v. State,* 552 S.W.2d 836 (Tex. Cr.App.1977).

"The rule is explained in 53 Tex.Jur.2d, Statutes, § 186, p. 280, where it is written:

" 'It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered as being in pari materia though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature.

" 'In order to arrive at a proper construction of a statute, and determine the exact legislative intent, all acts and parts of acts in pari materia will, therefore, be taken, read, and construed together, each enactment in reference to the other, as though they were parts of one and the same law. Any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy.

" 'The purpose of the in pari materia rule of construction is to carry out the full legislative intent, by giving effect to all laws and provisions bearing on the same subject. The rule proceeds on the same supposition that several statutes relating to one subject are governed by one spirit and policy, and are intended to be consistent and harmonious in their several parts and provisions. Thus, it applies where one statute deals with a subject in comprehensive terms and another deals with a portion of the same subject in a more definite way. But where a general statute and a more detailed enactment are in conflict, the latter will prevail, regardless of whether it was passed prior or subsequently to the general statute, unless it appears that the legislature intended to make the general act controlling. *And, the rule is not applicable to enactments that cover different situations and that were apparently not intended to be considered together.*' (Emphasis supplied.)

█ It has also been written that:

" 'Statutes are considered to be in pari materia—when they relate to the same person or thing, or to the same class of persons or things, or have the same purposes or object. As between characterization of the subject matter with which a statute deals and characterization of its object or purpose, the latter appears to be the more important factor in determining whether different statutes are closely enough related to justify interpreting one in the light of the other. *For example, it has been held that where the same subject is treated in several acts having different objects the rule of in pari materia does not apply. The adventitious occurrence of like or similar phrases, or even of similar subject matter, in laws enacted for wholly different ends will not justify applying the rule.*' C. Dallas Sands, Sutherland Statutory Construction, Vol. 2A, § 51.03, p. 298, and Supplement, p. 28 (1973) (Emphasis supplied.)

"It is stated in 82 C.J.S. Statutes § 366a, that:

" 'Statutes which relate to the same *person or thing, or to the same class of persons or things, or which have a com*mon purpose are *in pari materia.* On the other hand, statutes are not in pari materia which do not relate to the same subject and which have no common purpose and scope; and, although an act may incidentally refer to the same subject as another act, it is not in pari materia if its scope and aim are distinct and unconnected. . . .'

"Further, in 73 Am.Jur.2d, Statutes, § 189, it is said that:

" ' . . . Statutes which are parts of the same general scheme or plan, or are aimed at the accomplishment of the same results and the suppression of the same evil, are also considered as in pari materia. On the other hand, statutes which have no common aim or purpose, and which do not relate to the same subject, thing, or person, are not in pari materia. . . .' "

In *Alejos v. State,* supra, the two statutes involved were held not to be in pari materia although the statutes concerned the same subject because they had different objects, were intended to cover different situations, and apparently were not intended to be considered together.

■ If it can be argued, however, that said Articles 1911a and 20.15 are in pari materia, then under the rules of statutory construction the special statute, Article 20.-15, would govern over Article 1911a, the general statute.

The two statutes are not, however, in pari materia. Article 20.15 and its forerunners have long been a part of our criminal procedural laws. The procedure involves *only* the district court and a witness who may be held in contempt for refusing to testify before the grand jury. Article 1911a, enacted in 1971, deals with the contempt power of *all* courts concerning witnesses, officers of the court and others in a variety of situations. It is clear the two statutes are contained in different legislative acts, provide for different penalties, and are designed to serve different purposes and objectives. The provisions of the statutes are irreconcilable and the special statute, Article 20.15, must prevail under the rules of statutory construction. Although Article 1911a is the latter enactment, there is no manifest intent that the general provisions thereof relating to *any* act of contempt before *any* court control.

Not only was Article 20.15 the only statute applicable, but it was the statute under which the action proceeded. After the applicants first refused to testify before the grand jury, and at the hearing on the motion to compel the testimony of the applicants, the assistant district attorney testified:

"Q Under what authority are you asking the Court in your motion to compel testimony of Ronald Edwin Wilkinson before the 179th District Court Grand Jury investigating the

shooting death of William Scott Greene?

"A  Article 20.15 of the Code of Criminal Procedure.

\*  \*  \*  \*  \*  \*

"A  Well, the order is based on 20.15 ...."

After the court granted "use" immunity and ordered the applicants to testify before the grand jury, the applicants continued to claim their privilege against self-incrimination and so informed the court. The applicants were then taken before the grand jury where they refused to testify, again claiming the said privilege. Upon their return to court where the prosecutor informed the judge what had transpired at the time the court held the applicants in contempt, the record reflects:

> "MR. STRICKLIN (Assistant District Attorney): ... Your Honor, for the Record, I would think that based on 20.15 that the Court would have to both access (sic) a fine as well as a term in custody.
>
> "JUDGE McMASTER: That's true."

Almost immediately thereafter the court assessed punishment for contempt at six months in jail and a fine of $500.00. This was not in compliance with the penalty provisions of Article 20.15, supra, despite the comments of the judge and the prosecutor. No mention was ever made of Article 1911a, supra.

The formal written orders or judgments of contempt clearly show the act for which the applicants were held in contempt was their refusal before the grand jury to answer the questions of the assistant district attorney "as reflected in the transcription of the official Court Reporter of the said proceedings before said Grand Jury." The appearance of the applicants before the district court after their second refusal to testify before the grand jury was not a distinct and separate proceeding, but was assistance to the grand jury matter as envisioned by Article 20.15, supra.

■  The applicable statute therefore was Article 20.15, supra,[3] and the penalty assessed should have been under the provisions of that statute and not Article 1911a, supra. The court assessed an improper penalty rendering the entire penalty void. See *Ex parte Rodriguez*, 629 S.W.2d 757 (Tex. Cr.App.1982).

The applicants are entitled to the relief prayed for and are discharged from the orders of contempt entered by the district court.

It is so ordered.

CLINTON, Judge, concurring.

The thought advanced in dissent has been scrutinized several times by the Supreme Court of the United States over the past decade. Initially approved by a divided court in *Brown v. United States*, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1969), the notion was rejected, again by a majority, in *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965) and *Brown v. United States* was expressly overruled. *Harris v. United States, id.* 382 U.S. at 164–165,[1] 86 S.Ct. at 354–355. More recent-

---

3.  It would appear from the face of Article 20.-15, supra, that the applicants could have been found in contempt after their first refusal to answer the grand jury's questions despite their claims of the privilege of self-incrimination if the court found the questions "proper," etc. Is the statute constitutional, however, unless it has been interpreted that a question is deemed to be a "proper" one only when at the time it is propounded before the grand jury the witness, despite his claim of the privilege of self-incrimination, has been properly granted "use" or transactional immunity? See *Ex parte Moore-*

*house*, 614 S.W.2d 450, 452-453 (Tex.Cr.App. 1981) (Concurring Opinion). We conclude that the statute is not constitutional without this gloss by interpretation. In the instant case though the applicants were not held in contempt until after they were granted "use" immunity and still refused to testify before the grand jury.

1.  "The real contempt, if such there was, was contempt before the grand jury—the refusal to answer to it when directed by the court. Swearing the witness and repeating the ques-

ly, the analysis in *Harris,* set out in the margin below, was approved again by the Supreme Court in *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).[2]

Moreover, to uphold punishment under Article 1911a, V.A.C.S., is to say that somehow the court had general "authority" to order each applicant to answer questions. It did not. The authority of a court to compel a grand jury witness to answer a "proper" question is derived solely from Article 20.15, V.A.C.C.P.

Punishment could have been imposed under Article 20.15. There is no need for legislation.

TEAGUE, J., joins.

DALLY, Judge, dissenting.

I am convinced that Article 1911a, V.A.C.S. is applicable and that the applicants should not be granted relief, but I have been unsuccessful in persuading other members of the Court to so hold. The Supreme Court cases cited in the concurring opinion were not decided on constitutional grounds, but were merely interpretations of Federal Rules of Procedure. These Supreme Court cases cited have no bearing on how we construe the statutes of this State. Since the Court has held that Article 1911a, V.A.C.S. is not applicable, the next session of the legislature could, and in my opinion should, provide an adequate punishment for a witness who frustrates justice by refusing to testify before a grand jury after being granted use immunity.

W.C. DAVIS, J., joins in this dissent.

tions before the judge was an effort to have the refusal to testify 'committed in the actual presence of the court' for the purposes of Rule 42(a). It served no other purpose, for the witness had been adamant and had made his position known. The appearance before the District Court was not a new and different proceeding, unrelated to the other. It was ancillary to the grand jury hearing and designed as an aid to it."

**2.** Two concurring Justices, while not happy with all of *Harris,* do acknowledge that it stands for the proposition that "a witness" refusal to answer grand jury questions is not conduct 'in the actual presence of the court,' even when the questions are restated by the district judge and the witness persists in his refusal to answer," *id.* 421 U.S. at 321, 95 S.Ct. at 1809 (Blackmun, J., with whom Justice Rehnquist joins, concurring).