Irma Serrano ZANI, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00371–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 31, 1983.

Rehearing Denied Sept. 20, 1983.

David Weiner, San Antonio, for appellant.

Alger H. Kendall, Jr., Dist. Atty., Karnes City, for appellee.

Before CADENA, C.J., and REEVES and TIJERINA, JJ.

OPINION

REEVES, Justice.

Appellant was convicted of murder in a bench trial, and was assessed punishment at thirty years confinement in the Texas Department of Corrections. Appellant complains of the trial court's ruling which held for naught a conditional immunity agreement. We affirm.

Appellant and her husband, Robert Zani, posing as prospective purchasers of rural property, contacted Julius Alfred Dess, a real estate salesman situated in San Antonio, in regard to purchasing some rural acreage. The couple, however, had no intent to purchase property; their plan was to rob Dess of his money and credit cards. Dess met his death by receiving three rounds from a .25 caliber pistol in the head while sitting in the driver's seat of his automobile on a back road in Wilson County, Texas. By written statement, appellant acknowledged that Robert Zani had informed her that he was going to kill Dess. Appellant and husband pulled Dess's body over the front seat into the back seat of the car, covered the body, and drove to Nueces County. The body was disrobed and buried in a shallow grave on the beach. The fruits of the crime, $3.00 and some credit cards, were kept by Robert Zani. The couple retraced their steps to San Antonio, took a plane to the valley where their children and automobile had been left, and went to Mexico. Robert Zani was subsequently incarcerated and appellant went to Acapulco, Mexico, with her children.

At this time, law enforcement officers of the City of Austin and the County of Nueces, were investigating charges against Robert Zani. Learning that appellant was residing in Acapulco, representatives from those law enforcement offices were sent to Mexico in hope of interviewing her. On May 15, 1980, Officer Paul Ruiz and his partner, Robert Martinez of the Austin Police Department, Frank Maxwell, investigator from the Travis County District Attorney's Office, the sheriff of Nueces County, Solomen Ortiz, and his chief deputy, Florencio Rendon, arrived in Acapulco, Mexico.

On May 17, 1980, Florencio Rendon and a commandante of the Mexican Federal Judiciary Police, Commandante Rodea, contacted appellant at her home. Officer Ruiz subsequently joined the two.

The officers inquired extensively into the Dess homicide. They advised appellant that, although Texas law prohibited her from testifying against her husband, Robert Zani, it would be most helpful if she would return to the United States to help clear up the crime. She readily implicated her husband by stating that he, indeed, did shoot Dess in the head two or three times. However, she did not want to return to the United States lest she be prosecuted for her participation in the crime. The officers informed appellant that they had no authority to make such a guarantee, but would try to get it.

The officers returned May 19th and appellant knowingly gave a tape recording which related, in English, the facts surrounding the Dess homicide. Officer Ruiz informed appellant that they were still attempting to obtain an agreement of immunity, but if they were successful in obtaining the immunity agreement and she returned to the United States, she would be expected to tell the truth. Moreover, she would be asked to take a lie detector test to substantiate her story. She agreed to these conditions.

The immunity agreement arrived May 21st and, shortly thereafter, the officers returned again to appellant's mother's home. In addition to appellant and the officers, appellant's uncle, her mother and a Mexican official from the federal judiciary police were present. The officers testified that the immunity agreement was fully explained to the appellant, and that she and her uncle both read the statement. Questions were asked and answered. The immunity agreement in pertinent part provides:

> I do hereby agree as District Attorney for the State of Texas for Atascosa County, Texas, to not seek an indictment and to not prosecute Irma Sevano Reyes de Zani *if she did not directly cause the death of*

*Julius Alfred Dess* and she does the following: [Emphasis ours.]

1. Return to Texas.
2. Gives a complete statement of the events of Julius Alfred Dess's death.
3. Cooperate with our investigators and all agencies investigating the death of Julius Alfred Dess.
4. Turn over all evidence, pieces of evidence and all information known to her about the death of Julius Alfred Dess.

The agreement was signed by Alger H. Kendall, Jr., District Attorney, and approved and accepted by the Honorable J. Taylor Brite and R.L. Etchinburg, the two presiding district judges of Atascosa County, Texas. It was also signed by the appellant and five or six witnesses.

Appellant returned to Texas with the officers, and was lodged, at the expense of the State, in a motel in Austin, Texas. When not assisting the officers in their investigation of the Dess homicide, she was free to come and go at will. She made several telephone calls to her relatives in Mexico.

On May 29, 1980, and after she had received the *Miranda* warning, she gave a statement to Texas Ranger George E. "Gene" Powell. Ranger Powell testified in detail as to the thoroughness of his explanation of the warning, and that she had personally read the warning. She then gave a statement which solely implicated Robert Zani in the death of Dess. After the statement had been typed, appellant read the statement, made several corrections in the spelling found therein, initialed the corrections, and signed the statement.

In subsequent days, appellant, Ranger Powell, and other officers retraced the route taken by appellant, Robert Zani, and Mr. Dess on that fateful day. From this trip, the peace officers obtained from appellant and others, further information relating to the crime. For one thing, the peace officers learned that contrary to her statement, in all probability, appellant had been riding in the back seat of the automobile instead of the front seat. Ranger Powell

confronted appellant with this information and asked that she take a polygraph test. She agreed. On June 4, 1980, she met with Ronald Rogers, a polygraph operator for the Texas Department of Public Safety. Prior to taking the test, she was again given the *Miranda* warning and signed a statement to that effect. According to procedure, Rogers and appellant discussed the questions to be asked prior to examination. Powell informed her one of the questions would be whether she had participated in the actual shooting of Dess. During the examination, appellant denied that she had fired a shot into the head of Dess. After the test had terminated, Rogers informed appellant that the examination had indicated that she was lying in regard to firing a shot into Dess's head. At this time she told Rogers that her husband, Robert Zani, had shot Dess two or three times and handed the gun to her and forced her to shoot him one time. Shortly thereafter, Ranger Powell again gave appellant the *Miranda* warning and she gave a statement stating in pertinent part:

> I gave a statement to Texas Ranger G.E. Powell on Thursday, May 29, 1980, about Robert Zani shooting Mr. Julius Alfred Dess. At that time I told Ranger Powell that Robert Zani was the only person who shot Mr. Dess. I now wish to correct that statement and say that everything I said in the statement is the truth except that I also shot Mr. Dess one time.

Appellant was arrested and charged with the murder of Dess.

Appellant's sole ground of error contends that the evidence was insufficient to establish beyond a reasonable doubt that appellant "directly caused the death of Dess," and, therefore, she was entitled to immunity pursuant to the immunity agreement.

▮ Appellant filed a motion styled "Motion to Dismiss Indictment on the Ground that the Defendant had been Granted Immunity." A pretrial hearing was held on this and other motions. At the hearing appellant's statement was admitted which provides in pertinent part:

> I closed my eyes and shot Mr. Dess one time. I was sitting in the right front seat of Mr. Dess's car at that time. Mr. Dess was sitting in the left front seat still sitting pretty straight at the time I fired the shot into him. After I fired the shot Robert took the pistol and wiped it off, then put the pistol in his pocket.

There was also introduced into evidence, the findings made from the autopsy of Mr. Dess. Although this evidence, standing alone, might fall short of the legal mark of guilt beyond a reasonable doubt, the State at the trial in chief called Dr. Joseph C. Rupp, a forensic pathologist and the Nueces County Medical Examiner, who testified in depth as to the cause of Mr. Dess's death. His testimony in part, revealed the following:

> Q: Doctor, as to the cause of death of the man termed to be Julius Alfred Dess, what was the cause of death, sir?
>
> A: Cause of death was a direct result of gun shot wounds to the head.
>
> Q: Now, you have told us three gunshot wounds. Are you saying cumulatively they killed him or individually they killed him or can you tell us—?
>
> A: *Well, any of the three would have been fatal in and of themselves.* Gunshot wounds one and two would have been rapidly fatal in and of themselves. Gunshot wound number three was a potentially fatal wound and probably would have taken some time for the person to die. But the person died as of the cumulative effect of all three. [Emphasis ours.]

Although it is not clear which of the three rounds was inflicted by appellant, the evidence was sufficient for the trial court to find that appellant directly caused the death of the deceased.

▮ Customarily, the existence and validity of an immunity agreement, being a question of law for the determination of the judge, is heard before the trial in chief, *Camron v. State,* 32 Tex.Cr. 180, 22 S.W. 682 (1893), and the burden is on the appellant to prove, by a preponderance of the evidence, the existence of the alleged im-

munity contract. *Turney v. State,* 40 Tex.Cr. 561, 51 S.W. 243 (1899). However, the fact that the proof as to the cause of death was heard partially at the pretrial hearing and partially at the trial in chief was not error. *Turney, supra* at 243. The judge, who was the trier of the facts, found that there was evidence to prove beyond a reasonable doubt that appellant caused the death of Mr. Dess. In reviewing the sufficiency of the evidence we are obliged to construe the evidence in the light most favorable to the trial court's findings. *Daniel v. State,* 577 S.W.2d 231, 233 (Tex.Cr.App. 1979).

 Appellant contends that, due to the immunity agreement, she cannot be convicted as a party to the offense, and since the State had not shown beyond a reasonable doubt which bullet or bullets "directly caused the death" of Mr. Dess, the evidence was insufficient for her conviction. Appellant further contends that the State agreed at the preliminary hearing that appellant cannot be tried under the law of parties. This is contrary to the statement of facts. The district attorney, Alger H. Kendall, Jr., was called by the appellant at the pretrial immunity hearing. He testified:

Q: So you must have thought she was guilty of something, that's why you granted immunity, is that correct? Or you wrote your letter of immunity?

A: To get to what you are asking about, and like I tried to answer a while ago, —there would have been enough facts to go on her as an accomplice,—as a party to the offense of murder, if that's what you're saying, if that's what you're asking.

Q: What I'm saying, there was probable cause to indict her as a party to the crime for capital murder or murder?

A: There were facts sufficient to go to the Grand Jury for murder or capital murder, yes.

Q: So you were granting her immunity from the crime as a party to the crime of murder or capital murder?

A: Anything that would have arisen, capital—robbery, any of the things that would have arisen out of the Dess death.

MR. WINHOVEN: Okay. That's all.

WITNESS: You know, subject to the—as a party. You qualified that as a party. In other words, if the only thing we could prove is that she was a party to it, not a perpetrator, then I would think immunity—

[Questions By Mr. Winhoven]

Q: As a party, but not as a perpetrator?

A: I think I'm using the wrong words.

Q: I'm not sure I know what a perpetrator means.

A: That's my point. Just like the letter. If she didn't pull the trigger. If she was just riding along when it happened or she was there when it happened, I would consider that as a party. You pull the trigger—I use the word perpetrator as?

Q: But then as to the statement of June 4, 1980, you have no indication at all that she ever pulled the trigger. ·Is that correct?

A: That's basically correct. I had some suspicions but—or started—some information was not—seemed to be coming in inconsistent, but until the statement of June 4th, or until she flunked the lie detector test and made the statements on the 4th, there was nothing there that could have caused anything to be done to her.

If the immunity contract was ambiguous, parol evidence is admissible to explain the intent of the parties. *See Barr v. State,* 131 Tex.Cr. 369, 98 S.W.2d 811 (1936).

 Moreover, the immunity agreement was unenforceable when appellant acknowledged that she lied at the time she gave her first statement. Inherent in a contract by which the court and the district attorney agree to grant immunity from prosecution is that the accused honestly and truthfully make a full disclosure of the crime. If the accused, the contracting party, gives testimony or information that is partial or untruthful, the contract is unenforceable and can be held for naught.

*Camron, supra.* We hold that the immunity agreement was not enforceable and could be set aside by the State.

 Since the immunity agreement was not enforceable and was rescinded by the State, appellant could be tried under the law of parties. The proof, therefore, was more than adequate to establish the offense of murder.

> A defendant is guilty as a party where he is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement.

*Barron v. State,* 566 S.W.2d 929, 931 (Tex. Cr.App.1978).

The finder of fact, the court in this instance, could have found appellant guilty as a party whether she aided in the actual commission of the offense or not. *Barron v. State, supra.*

Furthermore, the medical examiner testified that any one of the three bullets lodged in the brain of Dess would have been fatal. Therefore, there is sufficient evidence to sustain a conviction under Tex.Penal Code Ann. § 6.04(a) (Vernon 1974), which provides:

> A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

The judgment of the trial court is affirmed.

TIJERINA, Justice, dissenting.

I respectfully dissent. It has long been established that the issue of immunity presents a question of law for the determination of the trial court. In the early case of *Camron v. State,* 32 Tex.Cr. 180, 22 S.W. 682 (1893) the defendant claimed he was induced to give evidence for the State by an immunity from prosecution agreement. The Court stated: "We do not think such a defense as we are here considering comes under the character of special pleas which are to be submitted and passed upon by a jury ... but rather belongs to those matters addressed solely to the consideration of the court...." *Id.* at 683. In accord with this rule of law is *Turney v. State,* 40 Tex.Cr. 561, 51 S.W. 243, 244 (1899) wherein the Court held that the existence of an offer of immunity is a question of law to be left to the discretion of the trial judge, subject to reversal only upon a showing of abuse of such discretion. The Court in *Turney* further noted that an appellant must prove, by a preponderance of the evidence, the existence of an alleged contract of immunity. *Id.* at 243. In *Govance v. State,* 109 Tex.Cr. 47, 2 S.W.2d 853, 855 (1928) the Court held: "[It] was incumbent on appellant to raise the question of immunity before the verdict of the jury...." Thus I construe the *Turney* and *Govance* cases, *supra,* as limiting appellant's burden to showing the existence of an immunity agreement.

The State, while conceding the existence of the written offer of immunity, contends that appellant had the additional burden of proving beyond a reasonable doubt that she did not directly cause the death of the victim. The State further claims that immunity is not a defense within the ambit of Tex.Penal Code Ann. § 2.03 (Vernon 1974), and that the question of immunity is similar to a plea for failure to provide a speedy trial. In speedy trial cases, once the defendant demonstrates that the State was not ready for trial within the time allowed by statute, the burden shifts back to the State to prove there were excludable periods of delay that would extend the initial time limitation. *See Newton v. State,* 641 S.W.2d 530, 531 (Tex.Cr.App.1982). Contrary to the State's claim, I believe that immunity agreements are defenses within the purview of the Penal Code. Tex.Penal Code Ann. § 2.03(d), (e) (Vernon 1974) provides as follows:

> (d) If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.

> (e) A ground of defense in a penal law that is not plainly labeled in accordance

with this chapter has the procedural and evidentiary consequences of a defense.

The practice commentary to Tex.Penal Code Ann. § 2.03 states:

> The effect of Subsection (d) is to require the State to disprove a defense beyond a reasonable doubt after the issue has been properly raised by the evidence. In other words, the defendant has the burden of producing evidence to raise a defense, but the prosecution has the final burden of persuasion to disprove it.

In *Luck v. State,* 588 S.W.2d 371 (Tex.Cr. App.1979), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980), the defendant raised the issue of self-defense and the trial court instructed the jury that the burden of proof beyond a reasonable doubt was on the State. The Court of Criminal Appeals approved the charge, stating: "Clearly, when the charge is viewed as a whole, it placed the burden on the State to show beyond a reasonable doubt that appellant was not acting in self-defense." *Id.* at 375.

Appellant is charged by indictment that she intentionally and knowingly caused the death of an individual, Julis Alfred Dess, by shooting him with a gun in the course of committing the offense of robbery. The constitutionally required burden of proof in criminal cases is that the State establish all elements of the offense beyond a reasonable doubt. *Crocker v. State,* 573 S.W.2d 190, 207 (Tex.Cr.App.1978). *See also* Tex.Penal Code Ann. § 2.01 (Vernon 1974). In the instant case appellant established through pre-trial motions the offer of immunity, and subsequently, in accordance with Tex.Penal Code Ann. § 2.03 (Vernon 1974) and *Luck v. State,* 588 S.W.2d at 375, the burden shifted to the State to establish and prove beyond a reasonable doubt that appellant directly caused the death of Julius Alfred Dess.

The two common types of immunity are "use" immunity and "transactional" immunity. Transactional immunity accords full protection from prosecution for the offenses to which the compelled testimony relates and affords the witness considerably broader protection than does the 5th Amendment privilege. "Use" immunity provides the grand jury witness with protection from prosecution emanating from the use of grand jury testimony and all information derived therefrom, either directly or indirectly. *See Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). *See generally* McLane, *Immunity: A State Grant of Amnesty,* 17 Crim.L. Bull. 234, 236–37 (1981). Under Tex. Const. art. I, § 10 no person can be compelled to testify against himself in a criminal case pending against him, nor give testimony on the trial of another on which a prosecution may or can be founded against him. The purpose of an immunity agreement is to protect a witness in his constitutional right against subjecting himself to prosecution resulting from his own disclosures, while at the same time securing the benefits of such testimony for the State. *Ex parte Copeland,* 91 Tex.Cr. 549, 240 S.W. 314, 318 (1922), *overruled on other grounds,* 640 S.W.2d 924, 928 (Tex.Cr.App.1982). When an immunity agreement is made as to a particular offense, the agreement will embrace any connected offense which is revealed by the testimony given pursuant to the grant of immunity. *See Camron v. State,* 22 S.W. at 863; *See Ex parte Shorthouse,* 640 S.W.2d 924, 928 (Tex.Cr.App. 1982). An offer of immunity may be authorized by statute, *e.g.,* Tex.Penal Code Ann. § 47.09 (Vernon 1974), or, as in the case at bar, it may be made by a prosecutor with the consent and approval of the court. *See Ex parte Shorthouse,* 640 S.W.2d 924, 928 (Tex.Cr.App.1982). When a prosecutor offers a contract of immunity, the witness will be exempt from prosecution if an honest and fair disclosure of the crime is given. Once compliance with the immunity agreement is established, the State is precluded from prosecuting the witness for the crime or crimes about which testimony was given. *See Camron v. State,* 22 S.W. at 683. As stated by the Court in *Camron,* "[i]f the State can make a contract with the defendant for immunity from prosecution for his offense, it is due to her own dignity that the contract be carried out in perfect faith,"

*Id.* at 682. Thus, in cases concerning the power of a prosecutor to grant immunity with the approval of the court, it would appear that the Court of Criminal Appeals has consistently held that a witness must be granted transactional immunity by the prosecutor before he can be compelled to testify. *See Ex parte Shorthouse,* 640 S.W.2d at 928 (and cases cited therein).

Officer Ruiz, from the Austin Police Department, and other officers questioned appellant in Acapulco, Mexico, starting on May 18, 1980. It appears that appellant and members of her family wanted a statement in writing that she would not be prosecuted if she returned to Texas. One of the officers returned to Texas and had the immunity agreement prepared, signed by the district attorney and two district judges, and air mailed it to Officer Ruiz in Acapulco. The immunity agreement was discussed with appellant, her family and a Mexican federal police officer. Appellant returned to Texas with the officers on May 27, 1980. Officer Ruiz testified at the pretrial hearing that he told appellant in Acapulco that if she told the truth she would have complete protection. Appellant, who has only a third-grade education, believed that she would be allowed to return to Mexico by June 4, 1980.

The record discloses that the district attorney was questioned at the pre-trial hearing regarding the extent of the immunity granted to appellant. When asked if the immunity related to the crime of murder or capital murder, the prosecutor replied that the immunity extended to "any of the things that would have arisen out of the Dess death." Appellant, pursuant to the immunity agreement, gave a written statement on May 29, 1980, detailing all of the events which led to the killing of the victim. Subsequently on June 4, 1980, she gave a second written statement which in pertinent part states the following:

> I now wish to correct that statement and say that everything I said in that statement is the truth except that I also shot Mr. Dess one time. Robert Zani was in the rear seat and he shot Mr. Dess 2 or 3 times. Robert Zani then gave me the pistol and told me to shoot Mr. Dess. I told him that I think he is dead. Robert Zani said so what and Robert put the gun in my hand. I closed by eyes and shot Mr. Dess one time.

Thus, the record reflects that appellant complied with the conditions of the immunity agreement by providing the State with two written statements. There is no evidence that appellant refused to testify for the State against defendant, Robert Zani.

The district attorney was cross-examined as follows:

> Q: But then until the statement of June the 4th, 1980, you had no indication at all that she ever pulled the trigger, is that correct?
>
> A: That's basically correct.

The United States Supreme Court addressed the issue of independent evidence in the use immunity case of *Murphy v. Waterfront Commission of New York,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), stating:

> Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they have an independent, legitimate source for the disputed evidence.

*Murphy v. Waterfront Commission of New York,* 378 U.S. at 79 n. 18, 84 S.Ct. at 1609 n. 18. The same principle should apply to the immunity question herein. It is apparent that appellant was led to believe that her cooperation with the State, including the two statements, was under the protection of the immunity agreement. The State effectively precluded any possible resistance by appellant to claim her right against self-incrimination. I would hold that the written statements, wherein appellant incriminated herself, were given pursuant to the offer of immunity and therefore constituted tainted, compelled and involuntary inadmissible testimony. I would further hold that the State did not have an independent legitimate source of evidence to establish the guilt of appellant. I con-

clude that the two confessions were induced by the immunity agreement and are not admissible.

I now consider appellant's complaint that there was insufficient evidence to prove beyond a reasonable doubt that appellant directly caused the death of the deceased. In reviewing the sufficiency of the evidence to support the conviction, the appellate court must view the evidence in the light most favorable to the verdict. "In doing so, the verdict will be sustained if there is any evidence which, if believed, shows the guilt of the accused." *Banks v. State,* 510 S.W.2d 592, 595 (Tex.Cr.App.1974). The State established beyond a reasonable doubt, through appellant's admission in her second written statement, that she fired a single shot. This is not sufficient, however, since the State's burden under the immunity agreement is to establish and prove beyond a reasonable doubt that appellant directly caused the death of the victim. In her second statement appellant stated that Robert Žani shot Mr. Dess two or three times and that she closed her eyes and shot Mr. Dess one time. Dr. Rupp testified that shots one and two entered the skull in close proximity and shot three was behind the ear. The testimony, in pertinent part, is as follows:

Q: Now, you have told us of three gunshot wounds. Are you saying cumulatively they killed him or individually . . . ?

A: Well, any of the three would have been fatal in and of themselves. Gunshot *wounds one and two would have been rapidly fatal in and of themselves.* Gunshot wound number three was a potentially fatal wound and probably would have taken some time for the person to die. But the person died as of the cumulative effect of all three. (Emphasis added.)

On cross-examination the following relevant testimony was given:

Q: All right. Plus I take it you said that the bullet hole Number 3 was not immediately fatal?

A: Was not immediately fatal.

\* \* \* \* \* \*

Q: Shot Number 3 with medical attention could very well survive?

A: It's not impossible.

The trial judge questioned Dr. Rupp as follows:

THE COURT: Let's assume that a period of time up to a minute or so, despite your opinion, intervened between the firing of shots one and two and the firing of shot three. Would shot three have hit a dead man?

A: In a couple of minutes? Not necessarily, no.

The testimony of Dr. Rupp is contradictory and certainly not conclusive in establishing the State's heavy burden of having to prove beyond a reasonable doubt that appellant directly caused the death of the victim. The evidence fails to establish beyond a reasonable doubt that Mr. Dess was alive when shot number three was fired.

The appropriate judicial reference to the question before us would be *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) where the United States Supreme Court held: "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *See also Batterbee v. State,* 537 S.W.2d 12 (Tex.Cr. App.1976). Having considered the evidence in the light most favorable to the finding of guilty by the trial court, I would find such evidence insufficient to establish the guilt of appellant beyond a reasonable doubt.

I would reverse the judgment and discharge appellant.